

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-16-00078-CV

**CODY TEXAS, L.P.**,
Appellant

v.

**BPL EXPLORATION, LTD.**,
Appellee

From the 49th Judicial District Court, Zapata County, Texas
Trial Court No. 8,665
Honorable Jose A. Lopez, Judge Presiding

Opinion by:    Jason Pulliam, Justice

Sitting:       Patricia O. Alvarez, Justice
               Luz Elena D. Chapa, Justice
               Jason Pulliam, Justice

Delivered and Filed:  December 14, 2016

REVERSED AND RENDERED; REMANDED FOR FURTHER PROCEEDINGS

### INTRODUCTION

Cody Texas L.P. (Cody Texas) filed a petition for bill of review seeking to set aside a final judgment entered following a bench trial. In this proceeding, Cody Texas asserted it did not receive notice of the final judgment until the trial court's plenary power expired, and therefore, was not afforded the opportunity to appeal. The parties filed cross motions for summary judgment. The trial court denied Cody Texas's petition for bill of review through rendition of summary judgment in favor of appellee, BPL Exploration, Ltd. (BPL) and denial of Cody Texas's cross

motion for summary judgment. In two points of error, Cody Texas contends: (1) the trial court erred by issuing summary judgment based upon a finding that Cody Texas was negligent in failing to learn of the May 31, 2013 final judgment; and (2) the trial court erred by issuing summary judgment based upon a finding that Cody Texas failed to prove a meritorious ground of appeal that the statute of limitations had expired on both of BPL's causes of action prior to the time BPL filed suit, and this accrual was not deferred by the discovery rule or fraudulent concealment.

Because we conclude the undisputed facts indicate that neither the discovery rule or the fraudulent concealment doctrine deferred accrual of BPL's breach of contract and fraud causes of action, Cody Texas had a meritorious ground for appeal of expiration of the applicable statute of limitations as a matter of law. We also conclude the undisputed facts establish Cody Texas's failure to receive notice of the trial court's May 31 final judgment was not mixed with any negligence of its own and Cody Texas's failure to file a timely notice of appeal was caused by the official mistake of the trial court clerk's failure to provide notice of the May 31 final judgment. Therefore, the trial court erred by granting BPL's motion for summary judgment, erred by denying Cody Texas's motion for summary judgment and erred by denying Cody Texas's bill of review.

## BACKGROUND

As the plaintiff in the original, underlying lawsuit, BPL asserted causes of action of fraud and breach of contract against Cody Texas stemming from alleged violations of a preferential right to purchase provision in a joint operating agreement. The underlying suit was filed in November 2005 and tried to the bench in February 2009. On May 31, 2013, the trial court signed a "Final Judgment" in favor of BPL and disposing "of all parties and all claims". On the same day and without knowledge of the final judgement, Cody Texas filed a request for additional and amended findings of fact and conclusions of law as well as its objections to the proposed judgment that had previously been submitted. The district clerk of the court entered the final judgment on the trial

court docket sheet six days later on June 6, 2013, but failed to give the parties or their attorneys notice of this judgment. Cody Texas filed an "Amended Request for Additional and Amended Findings of Fact and Conclusions of Law" on August 21, 2013, and indicated therein that "as of the date of this Request the docket sheet still did not show that a final judgment had been entered."

The parties do not dispute that counsel for Cody Texas did not learn the original "Final Judgment" had been entered until, at the earliest, October 9, 2013, when the trial court signed another "Final Judgment", and the district clerk sent copies of this judgment to the parties' counsel. Cody Texas subsequently filed a motion for new trial, and then, on January 2, 2014, filed a notice of appeal. This court dismissed that appeal for lack of jurisdiction concluding the second "Final Judgment" was void as a matter of law because the trial court had lost plenary power when it signed the October 9, 2013 judgment. *Cody Texas, L.P. v. BPL Expl., Ltd.*, 04-14-00087-CV, 2014 WL 1722126, at *1 (Tex. App.—San Antonio Apr. 30, 2014, no pet.). Consequently, the May 31, 2013 judgment was the live, valid judgment, and the appeal was untimely. *Id.*

Cody Texas then filed the underlying petition for bill of review in the trial court. Both parties filed motions for summary judgment. Following a summary judgment hearing, the trial court denied Cody Texas's bill of review by granting BPL's motion for summary judgment and denying Cody Texas's motion. Cody Texas perfected this appeal.

## ANALYSIS

### *Summary Judgment Burden of Proof*

To prevail on a summary judgment motion, a movant has the burden of proving that there is no genuine issue of material fact, and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a defendant moves for summary judgment, it must disprove at least one essential element of the plaintiff's cause of action. *Cathey*, 900 S.W.2d at 341. When a plaintiff moves for summary judgment on its own theory of

recovery, the plaintiff must prove it is entitled to summary judgment by establishing each element of its claim as a matter of law based upon undisputed or conclusive facts. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979); *Nelson v. Regions Mortg., Inc.*, 170 S.W.3d 858, 864 (Tex. App.—Dallas 2005, no pet.).

When, as here, parties file cross motions for summary judgment, each party in support of its own motion necessarily takes the position, and must so prove, that there is no genuine issue of material fact in the case, and it is entitled to judgment as a matter of law. *Ackermann v. Vordenbaum*, 403 S.W.2d 362, 364 (Tex. 1966); *Lambrecht & Assocs., Inc. v. State Farm Lloyds*, 119 S.W.3d 16, 20 (Tex. App.—Tyler 2003, no pet.). If one motion is granted and the other denied, we must review the summary judgment evidence presented by both sides and determine all questions presented. *Comm'rs Court of Titus Cnty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997).

## Bill of Review Burden of Proof

A bill of review is an equitable, independent action brought by a party who seeks to set aside a judgment that is no longer subject to challenge by a motion for new trial or appeal. *Caldwell v. Barnes*, 154 S.W.3d 93, 96 (Tex. 2004); *Baker v. Goldsmith*, 582 S.W.2d 404, 406 (Tex. 1979). To succeed upon a bill of review, a petitioner who participated in the trial court proceedings that resulted in the challenged judgment must plead and prove: (1) a meritorious ground of appeal exists; (2) which the party was prevented from presenting in a motion for new trial or an ordinary appeal by the fraud, accident, or wrongful act of the opposing party, **or** by an official mistake or misinformation; (3) unmixed with any fault or negligence of its own. *Petro–Chem. Transp., Inc. v. Carroll*, 514 S.W.2d 240, 245–46 (Tex. 1974); *McDaniel v. Hale*, 893 S.W.2d 652, 660, 662–63 (Tex. App.—Amarillo 1994, writ denied). The primary inquiry is whether the petitioner made a prima facie showing of a meritorious ground of appeal. *Petro-Chem.*, 514 S.W.2d at 245–46. A meritorious ground of appeal is one that probably would have

caused the judgment to be reversed had it been presented to the appellate court. *Petro–Chem.*, 514 S.W.2d at 245–46; *McDaniel*, 893 S.W.2d at 666–67. Thus, "[a] meritorious ground of appeal means a claim that would likely be a successful point of error in the court of appeals." *McDaniel*, 893 S.W.2d at 672.

In sum, to be entitled to summary judgment, a bill-of-review plaintiff must conclusively prove no genuine issue of material fact exists as to each element of its bill-of-review action, and it is entitled to a bill of review as a matter of law. *See Comm'rs Court of Titus Cnty.*, 940 S.W.2d at 81; *Cathey*, 900 S.W.2d at 341; *Wuxi Taihu Tractor Co., Ltd. v. York Group, Inc.*, 01-13-00016-CV, 2014 WL 6792019, at \*4 (Tex. App.—Houston [1st Dist.] Dec. 2, 2014, pet. denied) (mem. op.). A bill-of-review defendant moving for summary judgment must disprove at least one essential element of the plaintiff's bill of review by conclusively establishing no genuine issue of material fact exists and the plaintiff's assertion with regard to the element fails as a matter of law. *See Comm'rs Court of Titus Cnty.*, 940 S.W.2d at 81; *Cathey*, 900 S.W.2d at 341; *Wuxi Taihu Tractor Co., Ltd.*, 2014 WL 6792019, at \*4.

*Summary Judgment Standard of Review*

When a trial court grants summary judgment on a bill of review, the summary judgment standard of review applies upon appeal. *See Boaz v. Boaz*, 221 S.W.3d 126, 131 (Tex. App.—Houston [1st Dist.] 2006, no pet.). When cross motions for summary judgment are filed, we review the trial court's grant and, if necessary, denial of summary judgment on a bill of review *de novo* and must review the summary judgment evidence presented by both sides and examine all issues presented. *Comm'rs Court of Titus Cnty.*, 940 S.W.2d at 81; *Boaz*, 221 S.W.3d at 131. In so doing, we first review the order granting summary judgment. *Lambrecht & Assocs.*, 119 S.W.3d at 20. Only if we determine the order granting summary judgment was erroneous do we review the trial court's action in overruling the denied motion. *Id.*

If the issue raised in a motion for summary judgment is based upon undisputed and unambiguous facts, the appellate court must determine the question presented as a matter of law. *Gramercy Ins. Co. v. MRD Investments, Inc.*, 47 S.W.3d 721, 725 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *McCreight v. City of Cleburne*, 940 S.W.2d 285, 287–88 (Tex. App.—Waco 1997, writ denied). In this situation, the appellate court will either affirm the judgment or reverse and render the correct judgment. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex. 1988); *McCreight*, 940 S.W.2d at 287–88. However, if determination of the issue presented lies in disputed or ambiguous facts, summary judgment is inappropriate, and the appellate court must reverse and remand. *See Coker v. Coker*, 650 S.W.2d 391, 394–95 (Tex. 1983); *McCreight*, 940 S.W.2d at 287–88.

Thus, in the context of this appeal from the denial of a bill of review arising out of cross motions for summary judgment, we review first the propriety of the trial court's summary judgment in favor of BPL, and, if necessary, will then review the propriety of the trial court's denial of Cody Texas's motion for summary judgment. As the successful summary-judgment movant, BPL was required to establish no genuine issue of material fact exists regarding at least one of the three required bill-of-review elements, and it is entitled to judgment denying the bill of review as a matter of law.

BPL challenged two of the three bill of review elements: meritorious ground of appeal and whether Cody Texas's inability to appeal was mixed with its own negligence. We must address first the meritorious-ground-of-appeal element and determine whether the trial court erred by finding Cody Texas does not have a meritorious ground of appeal as a matter of law, and no genuine issue of material fact exists on this element. If we conclude that the trial court erred and conclude Cody Texas had a meritorious ground of appeal, we must then similarly examine the second challenged bill-of-review element: whether Cody Texas was negligent by failing to

discover the trial court entered a final judgment prior to the time the trial court's plenary power expired.

*Application*

## I. First Element: Meritorious Ground of Appeal

In its petition for bill of review and on appeal, Cody Texas argued it held and presented prima facie evidence of a meritorious ground of appeal that the statute of limitations expired on BPL's fraud and breach of contract causes of action, thereby barring adjudication of each.[1]

*Undisputed Underlying Facts*

De novo review of the record and arguments reveal the underlying facts necessary to analyze and determine the statute-of-limitations issue, that is, the accrual date of BPL's causes of action, are undisputed. Therefore, the trial court's summary judgment was based upon undisputed facts, and it determined the statute of limitations issue as a matter of law.

In 1994, BPL and Mustang Oil & Gas Corp. ("Mustang") acquired nine wells on four different leases in Zapata County, Texas and 100% of the working interests in the wells. BPL and Mustang entered into a Joint Operating Agreement (the "JOA"), under which Mustang acted as the operator with an 80% interest, and BPL held a 20% interest. The JOA contained the following "preferential right to purchase" provision:

> Should any party desire to sell all or any part of its interests under this agreement, or its rights and interests in the Contract Area, it shall promptly give written notice to the other parties, with full information concerning its proposed disposition, which shall include the name and address of the prospective transferee (who must be ready, willing and able to purchase), the purchase price, a legal description sufficient to identify the property, and all other terms of the offer. The other parties shall then have an optional prior right, for a period of ten (10) days after the notice

---

[1] In its petition for bill of review, Cody Texas argued it had three meritorious grounds of appeal. However, on appeal, Cody Texas challenges the trial court's summary judgment with regard to the statute-of-limitations ground, only. Therefore, this court will only analyze the propriety of the trial court's summary judgment with regard to the statute-of-limitations ground of appeal.

is delivered, to purchase for the stated consideration on the same terms and conditions the interest which the other party proposes to sell. . . .

The JOA provides that its terms, including the preferential right provision, run with the land and are binding on the parties and their successors and assigns.

In 1997, Mustang filed a bankruptcy proceeding, through which Choctaw Corporation ("Choctaw") acquired all of Mustang's 80% working interest in the JOA Properties. In the same bankruptcy proceeding, Queen Sand Resources ("QSR") acquired overriding royalty interests attached to a portion of Mustang's interests in non-JOA properties.

On April 18, 2000, Cody Texas sent a "letter of intent" to Choctaw and QSR offering to purchase all of each party's interests in various properties, which included Choctaw's 80% interest in the JOA Properties. Cody and QSR entered into a separate letter agreement on April 20, 2000, under which Cody agreed to transfer to QSR 25% of its interest in all of the properties (JOA and non-JOA properties) received under the April 18 letter of intent. On April 24, 2000, Choctaw and QSR entered into a letter agreement providing that: (1) QSR would accept Cody's April 18 offer; and (2) Choctaw would receive $777,000 of the proceeds from the transaction for its interests in the JOA Properties. An exhibit attached to the letter agreement explained how Choctaw and QSR would split the $16,275,000 Cody was paying for the entire property package. Choctaw would receive $777,000 "off the top" for the JOA Properties, because QSR had no interest in those properties to sell. The remainder would be split based on Choctaw's and QSR's respective interests in the other properties being sold.

On June 7, 2000, Cody, Choctaw, and QSR executed a "Purchase and Sale Agreement" ("PSA") with an allocation provision providing that each property would have two values:

> (c) Allocation of the Purchase Price. Purchaser [Cody] shall allocate the Purchase Price ("Allocated Value") among the Property as set forth in Exhibit "B" hereto and which shall be acceptable to Seller…. The Allocated Value set out in Exhibit "B" reflects the working interest and net revenue interests in each Well and in

reserves … associated with those Wells, as set out in Exhibit "A". Choctaw and Queen Sand agree to apportion the Allocated Value of each Property between the Choctaw Interest and the Queen Sand Interest without Purchaser's Involvement and in accord with that certain letter agreement between Choctaw and Queen Sand dated April 24, 2000.

It is undisputed that pursuant to the above provision, Cody assigned an "Allocated Value" to each of the JOA properties for a total of $947,000. Pursuant to their letter agreement, Choctaw and QSR agreed to apportion this allocated value, entitling Choctaw to receive $777,000 before the remainder was split with QSR based on each party's respective interests. Also pursuant to the PSA and the letter agreements, the sale or transfer of all of the properties between Choctaw, Cody Texas and QSR was to be considered effective January 1, 2000, thereby granting Cody Texas the right to proceeds from any operations on the JOA Properties beginning January 1, 2000. Cody Texas agreed to "assume and pay, perform, fulfill and discharge of [sic] all claims, costs, expenses, liabilities and obligations attributable to the period of time after the Effective Date accruing or relating to . . . owning, developing, exploring, operating or maintaining the Property . . . ." effective January 1, 2000.

On June 9, 2000, Choctaw sent BPL a letter informing BPL of the potential sale. In this notice, Choctaw stated that it planned to sell its interests in the JOA Properties to Cody Texas, as well as the allocated price of $947,000. The letter did not reveal any other terms of the sale, such as the retroactive effective date, and did not disclose that Choctaw actually would receive $777,000 for its interests in the JOA Properties and split the remainder with QSR pursuant to their respective interests in all of the properties sold. The letter did not inform BPL about Cody Texas's agreement to transfer to QSR 25% of its interests in all of the properties it was purchasing.

Upon receipt of the letter, Bill Baker, BPL's Manager, immediately contacted Choctaw and requested additional information, including the PSA, the allocation facts, and confirmation of the price. Choctaw refused to provide any documents or further information, claiming a

confidentiality clause in the PSA precluded such disclosure. On June 12, 2000, Bill Baker, as representative of BPL, executed and returned the notice letter indicating BPL waived its preferential right to purchase the JOA properties that were the subject of the impending sale.

On June 30, 2000, Choctaw, Cody Texas and QSR executed the documents necessary to fulfill the terms of the PSA. Choctaw conveyed its interests in the JOA Properties to Cody Texas by assignment, effective January 1, 2000. Cody Texas conveyed to QSR by assignment an undivided 25% of its interests in all of the properties, effective January 1, 2000. All parties filed the documents of transfer in the public records of Zapata County on July 11, 2000.

On October 22, 2004, BPL learned of Cody Texas's transfer of its 25% interest in the JOA properties to QSR. Following failed discussions, BPL filed suit against Choctaw, Cody Texas and others on November 28, 2005 alleging breach of contract (the JOA Agreement). BPL alleged the defendant parties violated the preferential right provision with regard to the sale of the JOA properties by Choctaw to Cody Texas. BPL asserted that Cody Texas incurred any liability for Choctaw's breach of contract because the effective date of the transfer of the JOA properties was backdated to January 1, 2000.

During discovery in the ongoing litigation, BPL learned of the PSA and letter agreements between the parties which disclosed the transfer of interest by Cody Texas to QSR. BPL then amended its pleading to add fraud and breach of contract causes of action with regard to the Cody Texas/QSR transaction, asserting Cody Texas breached the JOA preferential-right-to-purchase provision by failing to provide BPL notice of Cody Texas's transfer of its 25% interest to QSR before it occurred, again based upon the backdate to January 1, 2000.

*Determination of Accrual of the Causes of Action*

The purpose of statutes of limitations is to compel the assertion of claims within a reasonable period while the evidence is fresh in the minds of the parties and witnesses. *Computer*

*Assocs. Intern., Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996). To ensure prompt assertion of claims, the Texas statute of limitations requires that any suit alleging breach of contract or fraud must be filed within four years of the date the cause of action accrued. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004, 16.051 (West 2002); *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 315 (Tex. 2006).

A cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later and even if all resulting damages have not yet occurred. *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990). Thus, for a cause of action to begin to accrue, a party need only be aware of enough facts to apprise him of his right to seek judicial remedy. *Moreno*, 787 S.W.2d at 351; *Booker v. Real Homes, Inc.*, 103 S.W.3d 487, 491–92 (Tex. App.—San Antonio 2003, pet. denied).

Accrual of a cause of action is deferred in two types of cases: those involving fraud, in which the fraudulent concealment doctrine would apply, and all others, in which the discovery-rule exception would apply. *S.V.*, 933 S.W.2d at 6. First, when fraudulent concealment is alleged, "accrual is deferred because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *Computer Assocs. Intern., Inc.*, 918 S.W.2d at 456. Fraud, "in and of itself prevents running of the statute of limitations." *Id*. In all other cases, accrual can be deferred if the discovery rule applies. *Id*.

Because BPL asserted both fraudulent concealment and discovery rule exceptions to the strictly enforced statute of limitations, and each exception must be analyzed differently to determine its applicability, each will be discussed separately. *See id*.

**1. Breach of Contract Cause of Action and Discovery Rule Exception to the Statute of Limitations**

A breach of contract claim accrues when the contract is breached. *Cosgrove v. Cade*, 468 S.W.3d 32, 39 (Tex. 2015); *B. Mahler Interests, L.P. v. DMAC Constr., Inc.*, 14-15-00061-CV, 2016 WL 4922775, at *3 (Tex. App.—Houston [14th Dist.] Sept. 15, 2016, no. pet. h.). A breach of contract occurs when a party fails or refuses to do something he is contractually obligated to do. *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 227 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

Because it compromises the purpose of statutes of limitations, the discovery rule is a very limited exception to the general rule of accrual and determination must be made, first, whether the discovery rule applies under the circumstances and facts in any given case. *Computer Assocs. Intern., Inc.*, 918 S.W.2d at 455. "The discovery rule may apply to a breach of contract claim, but 'those cases should be rare, as diligent contracting parties should generally discover any breach during the relatively long four-year limitations period provided for such claims.'" *Via Net*, 211 S.W.3d at 315; *Clear Lake Ctr., L.P. v. Garden Ridge, L.P.*, 416 S.W.3d 527, 543 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

In cases other than those involving fraud, the discovery rule may apply to defer the accrual of a cause of action when "the alleged wrongful act and resulting injury were inherently undiscoverable at the time they occurred but may be objectively verified." *S.V.*, 933 S.W.2d at 6. These two elements balance the conflicting policies in statutes of limitations: the benefits of precluding stale or spurious claims versus the risks of precluding meritorious claims that happen to fall outside an arbitrarily set period. *S.V.*, 933 S.W.2d at 6. The term "inherently undiscoverable" does not mean that the injury is absolutely impossible to discover. *S.V.*, 933 S.W.2d at 7. "[D]iscovery of a particular injury is dependent not solely on the nature of the injury

but on the circumstances in which it occurred and plaintiff's diligence as well." *Id.* Thus, an injury is "inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *Id.* (citing *Computer Assocs.*, 918 S.W.2d at 456); *see Bayou Bend Towers Council of Co-Owners v. Manhattan Construction Co.*, 866 S.W.2d 740, 742–743 (Tex. App.—Houston [14th Dist.] 1993, writ denied). Reference to "injury" refers to the facts giving rise to a cause of action, and does not refer to the extent of any damages that may result from a wrongful act. *S.V.*, 933 S.W.2d at 7.

If it is determined the plaintiff's injury is inherently undiscoverable and injury is objectively verifiable, the discovery rule applies to defer the accrual of a cause of action until the plaintiff discovers or, through the exercise of reasonable care and diligence, should have discovered the facts establishing a cause of action. *Via Net*, 211 S.W.3d at 313-14; *Booker*, 103 S.W.3d at 491–92. Therefore, a cause of action does not accrue when the first damage is observed or when the full extent of the damage is known, but rather when the injured party knew or should have known of the facts giving rise to the cause of action. *Via Net*, 211 S.W.3d at 313-14; *Booker*, 103 S.W.3d at 491–92.

The discovery rule imposes a duty on the plaintiff to exercise reasonable diligence to discover the facts giving rise to a cause of action. *Via Net*, 211 S.W.3d at 314; *Bayou Bend*, 866 S.W.2d at 743. Because contracting parties generally are not fiduciaries, due diligence requires that each party protect its own interests. *Via Net*, 211 S.W.3d at 314; *B. Mahler Interests*, 2016 WL 4922775, at *4. "Due diligence may include asking a contract partner for information needed to verify contractual performance. If a contracting party responds to such a request with false information, accrual may be delayed for fraudulent concealment. But failing to even ask for such information is not due diligence." *Via Net*, 211 S.W.3d at 314 (citations omitted); *see also Seureau*, 274 S.W.3d at 229.

Following this analytical framework, when the statute of limitations and the discovery rule exception are asserted, the first issue to be determined is whether the discovery rule applies. If the facts giving rise to the cause of action are inherently undiscoverable and any injury is objectively verifiable, then the discovery rule applies. If this occurs, the second issue to be determined is when the cause of action accrued. This is determined by when the plaintiff knew, or in the exercise of reasonable diligence, should have known of the facts giving rise to the asserted cause of action. *Via Net*, 211 S.W.3d at 314; *B. Mahler Interests,* 2016 WL 4922775, at *4.

In cases such as this, when the parties file cross motions for summary judgment on the affirmative defense of statute of limitations and the discovery-rule exception is asserted, each party has the burden to establish conclusively its position whether the discovery rule applies. *See KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999); *Lambrecht & Assocs.*, 119 S.W.3d at 20; *Clear Lake Ctr.*, 416 S.W.3d at 543. If the discovery rule does apply, each party has the burden to establish conclusively its position on when the cause of action accrued by proving there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of its injury, and the party is entitled to summary judgment as a matter of law. *Lambrecht & Assocs.*, 119 S.W.3d at 20.

In this case, Cody Texas argues, first, the trial court erred by granting summary judgment because, based upon the undisputed facts, the discovery rule does not apply and the statute of limitations bars BPL's breach of contract cause of action. Even if the discovery rule does apply, Cody Texas asserts BPL knew or should have known of the facts giving rise to its cause of action against Cody Texas when Choctaw provided notice of the impending sale on June 9, 2000. Cody Texas also contends BPL had constructive notice as a matter of law when the transaction documents were filed in Zapata County.

BPL responds that the trial court did not err by granting summary judgment because the discovery rule does apply to defer accrual of its breach of contract causes of action. BPL contends Cody Texas is liable for Choctaw's breach of contract because the PSA backdated all transfers to January 1, 2000. BPL also argues it first gained access to the PSA through discovery in the litigation. Thereby, with regard to the Cody Texas/QSR transfer of interest, BPL asserts it first learned of the facts supporting its breach of contract and fraud causes of action against Cody Texas during this litigation.

As stated, the facts necessary to determine whether the discovery rule applies, and if so, the accrual date of the breach-of-contract cause of action are undisputed. These undisputed facts establish that, as required by the preferential right to purchase provision, on June 9, 2000, Choctaw sent BPL notice of its impending sale of the JOA properties to Cody Texas. Because the notice letter did not disclose all of the information required by the preferential right to purchase provision in the JOA, BPL's Manager Bill Baker responded requesting this information. When Choctaw refused disclosure of the required information, Baker responded by waiving BPL's preferential right to purchase the JOA properties.

a) Choctaw/Cody Texas Transaction[2]:

To the extent BPL's breach of contract cause of action is based upon Cody Texas's assumption of liability for Choctaw's breach, based upon this undisputed evidence, the facts giving rise to BPL's breach of contract cause of action were not inherently undiscoverable. This undisputed evidence establishes that in June 2000 BPL was aware of Choctaw's potential breach

---

[2] Cody Texas was not a party to the JOA between BPL and Choctaw. Therefore, with regard to the Choctaw/Cody Texas transfer, BPL's breach of contract cause of action against Cody Texas is based upon BPL's assertion that Cody Texas assumed liability for Choctaw's breach of contract due to the backdating of the PSA agreement to January 1, 2000, and in which Cody Texas agreed to "assume and pay, perform, fulfill and discharge of [sic] all claims, costs, expenses, liabilities and obligations attributable to the period of time after the Effective Date accruing or relating to . . . owning, developing, exploring, operating or maintaining the Property . . . ."

of the preferential rights provision in the JOA or was aware of sufficient facts to impose an obligation to exercise reasonable diligence to protect its own interest. When Choctaw refused to disclose the information required by the preferential rights provision of the JOA, BPL knew of the circumstances and facts that gave rise to its breach of contract action, and, in fact, acted by waiving its right to preferential purchase rather than pursue the full disclosure of information required. Because under these undisputed facts, BPL knew of the facts and circumstances giving rise to its breach of contract cause of action, its cause of action was not inherently undiscoverable as a matter of law. *See Via Net*, 211 S.W.3d at 314; *B. Mahler Interests*, 2016 WL 4922775, at \*6. To the contrary, the facts and circumstances giving rise to its cause of action were known, and given that, BPL was aware of the impending sale to Cody Texas, due diligence required BPL to protect its own interests. *See Via Net*, 211 S.W.3d at 314; *B. Mahler Interests*, 2016 WL 4922775, at \*6; *Seureau*, 274 S.W.3d at 229.

Because the facts and circumstances giving rise to BPL's breach-of-contract cause of action against Choctaw were not inherently undiscoverable, the discovery rule does not apply to defer accrual of this cause of action as a matter of law. *See Via Net*, 211 S.W.3d at 314; *B. Mahler Interests*, 2016 WL 4922775, at \*6. These undisputed facts do not present one of those "rare" circumstances in which a contracting party exercising reasonable diligence could not discover the breach during the "relatively long four-year limitations period." *See Via Net*, 211 S.W.3d at 315; *B. Mahler Interests*, 2016 WL 4922775, at \*6.

Thus, BPL's breach of contract causes of action against Cody Texas accrued in June 2000 when Choctaw sent the notice letter to BPL and subsequently refused BPL's request for information in compliance with the preferential right to purchase provision in the JOA. BPL filed its breach of contract actions against Choctaw and Cody Texas on November 28, 2005, outside of the four-year statute of limitations. Therefore, BPL's breach of contract causes of action against

Cody Texas are barred by the four-year statute of limitations. For this reason, Cody Texas presented prima facie proof of a meritorious ground of appeal on BPL's breach of contract cause of action with regard to the Choctaw/Cody Texas transfer.

        b) <u>Cody Texas/QSR Transaction</u>:

To the extent BPL's breach of contract action is based upon Cody Texas's failure to notify it of Cody Texas's transfer of 25% interest in the JOA properties to QSR, the facts giving rise to this cause of action were not inherently undiscoverable, thereby precluding application of the discovery rule. As with the Choctaw/Cody Texas transfer, BPL had sufficient information and facts to discover the information required to be disclosed in the JOA before Cody Texas's transfer to QSR. *S.V.*, 933 S.W.2d at 6; *Computer Assocs.*, 918 S.W.2d at 456. The Choctaw/Cody Texas transfer and the Cody Texas/QSR transfer occurred simultaneously as part of the same negotiated sale of properties. Consequently, any disclosure of the sale price of the JOA properties would have necessarily included disclosure of the Cody Texas/QSR transfer of interest. The Cody Texas/QSR transfer did not create any injury of the nature that was "unlikely to be discovered". Although subject to a confidentiality provision, the fact of the transfer itself was discoverable and any obligation by Choctaw to disclose the full terms of the sale of the JOA properties was known to be compelled by the JOA. Therefore, under these circumstances, any injury by BPL was not "by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *S.V.*, 933 S.W.2d at 6; *Computer Assocs.*, 918 S.W.2d at 456.

Further, Cody Texas could not have incurred any contractual obligation to notify BPL of its transfer to QSR until June 30, 2000, the day the transfers occurred. Although the PSA backdated the transfers to January 1, 2000, as a non-party to the JOA, Cody Texas could not have incurred any contractual obligation under the JOA until Cody Texas received the JOA properties from Choctaw on June 30, 2000. Therefore, although the transfer of the property was backdated,

any contractual obligation compelling Cody Texas to provide notice under the preferential rights provision could not have been incurred until the actual transfer on June 30, 2000.

We conclude that the facts giving rise to BPL's breach of contract cause of action against Cody Texas were not inherently undiscoverable. Accordingly, the discovery rule did not apply to defer the accrual of BPL's breach of contract cause of action against Cody Texas with regard to the Cody Texas/QSR transfer of interest.

Thus, BPL's breach of contract cause of action against Cody Texas with regard to the Cody Texas/QSR transfer accrued in June 2000 when Choctaw sent the notice letter to BPL and subsequently refused BPL's request for information in compliance with the preferential right to purchase provision in the JOA. BPL filed its breach of contract actions against Cody Texas on November 28, 2005, outside of the four-year statute of limitations. Therefore, BPL's breach of contract cause of action against Cody Texas is barred by the four-year statute of limitations. For this reason, Cody Texas presented prima facie proof of a meritorious ground of appeal on BPL's breach of contract cause of action with regard to the Cody Texas/QSR transfer.

Because we conclude the summary judgment record and the undisputed facts reveal Cody Texas held a meritorious ground of appeal, we sustain Cody Texas's second issue on appeal with regard to BPL's breach of contract causes of action.

### 2. Fraud Cause of Action and Fraudulent Concealment Exception to Statute of Limitations

A fraud claim begins to accrue when a reasonably prudent person would suspect he has been a victim of fraud and becomes aware of sufficient facts to provide cause to investigate. *Little v. Smith*, 943 S.W.2d 414, 420 (1997). Fraudulent concealment is a fact-specific doctrine based upon the principles of equitable estoppel and acts to toll the statute of limitations after the cause

of action accrues.[3] *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011); *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983). Fraudulent concealment estops a defendant to rely on the statute of limitations as an affirmative defense when the defendant owes a duty to disclose but fraudulently conceals the existence of a cause of action. *Borderlon*, 661 S.W.2d at 908; *B. Mahler Interests*, 2016 WL 4922775, at *8. Thereby, the doctrine of fraudulent concealment acts to toll the running of the limitations period until the fraud is discovered or could have been discovered with reasonable diligence "'because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run.'" *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011) (quoting *S.V.*, 933 S.W.2d at 6); *see also Marshall*, 342 S.W.3d at 67

The fraudulent concealment doctrine requires that BPL prove Choctaw, or Cody Texas, "'actually knew a wrong occurred, had a fixed purpose to conceal the wrong, and did conceal the wrong.'" *Shell Oil Co.*, 356 S.W.3d at 927 (quoting *Shah v. Moss*, 67 S.W.3d 836, 841 (Tex. 2001)). However, it is only concealment of the cause of action that serves to toll the statute of limitations. *See Marshall*, 342 S.W.3d at 67; *Baxter v. Gardere Wynne Sewell LLP*, 182 S.W.3d 460, 464 (Tex. App.—Dallas 2006, pet. denied). If, as in this case, fraudulent concealment is based on a fraudulent representation by the defendant, the plaintiff must demonstrate that reliance on that representation was reasonable. *Marshall*, 342 S.W.3d at 68; *B. Mahler Interests*, 2016 WL 4922775, at *8. Reliance on a fraudulent representation "is not reasonable when information revealing the truth could have been discovered within the limitations period." *Marshall*, 342 S.W.3d at 68; *B. Mahler Interests*, 2016 WL 4922775, at *8.

---

[3] Often confused with the discovery rule, the two doctrines are distinct, and "each is characterized by different substantive and procedural rules." *S.V.*, 933 S.W.2d at 4; *Marshall*, 342 S.W.3d at 62. While each serves to extend the statute of limitations, the doctrine of fraudulent concealment concerns whether, and for how long, the statute of limitations is tolled while the discovery rule determines when a cause of action accrues. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 928 (Tex. 2011).

A party asserting fraudulent concealment as an avoidance or exception to the statute of limitations has the burden to raise it in response to the summary judgment motion and to come forward with summary judgment evidence raising a fact issue on each element of the fraudulent concealment defense. *KPMG Peat Marwick*, 988 S.W.2d at 749–50; *Mellon Serv. Co. v. Touche Ross & Co.*, 17 S.W.3d 432, 436 (Tex. App.—Houston [1st Dist.] 2000, no pet.).[4]

We already have determined based upon the undisputed facts that Choctaw informed BPL of its intention to sell the JOA properties to Cody Texas. By receiving such notice, BPL became aware of sufficient facts to know Choctaw intended to sell the JOA properties to Cody Texas. When BPL requested the full information pertaining to the sale as required by the preferential rights provision in the JOA, Choctaw refused, citing a confidentiality provision. By openly refusing to provide the information requested by BPL, Choctaw could not have committed an underlying tort of fraud nor could it have fraudulently concealed the existence of a cause of action based upon its failure to provide information pertaining to the sale of the JOA properties. By its nature, the doctrine of fraudulent concealment will not toll limitations unless the wrongdoer fraudulently conceals the plaintiff's cause of action. *Otis v. Scientific Atlanta*, 612 S.W.2d 665, 667 (Tex. App.—Dallas 1981,); *see also Burns v. Thomas*, 790 S.W.2d 1, 2 (Tex. App.—Amarillo 1988), *rev'd on other grounds,* 786 S.W.2d 266 (Tex. 1990). Therefore, concealment of any information required to be provided by the JOA does not toll the statute of limitations when BPL knew, or reasonably should know, it had a cause of action. Here, although BPL was unaware of all potential defendants or potential damages, it was aware of its potential cause of action in June

---

[4] BPL contends on appeal that Cody Texas failed to contest and present controverting evidence on the lack of fraudulent concealment in its motion for summary judgment, and thereby waived any argument pertaining to its application. However, within the context of cross motions for summary judgment and because BPL asserted fraudulent concealment to avoid the statute of limitations, BPL held the burden to come forward with summary judgment evidence compelling its application.

of 2000. Consequently, the doctrine of fraudulent concealment does not apply. *See Baxter*, 182 S.W.3d at 464; *Otis*, 612 S.W.2d at 667.

In addition, any reliance on any misrepresentation could not have been reasonable because BPL could have discovered information revealing the truth within the limitations period. *Marshall*, 342 S.W.3d at 68; *B. Mahler Interests*, 2016 WL 4922775, at *8-*11. As in *Marshall*, BPL was obliged to perform additional investigation to protect its interests upon receipt of incomplete information and Choctaw's refusal to provide the information required by the JOA. If BPL could have discovered Choctaw's wrongdoing by reviewing information available in the public record, or through means other than Choctaw's representations before limitations expired, it did not exercise reasonable diligence in relying on Choctaw's representations. *Marshall*, 342 S.W.3d at 67–68.

In light of Choctaw's notice to BPL concerning the impending sale, BPL's knowledge that Choctaw provided incomplete information and knowledge of Choctaw's apparent refusal to provide full information required by the preferential rights provision, BPL cannot prove or present evidence raising a fact issue that Choctaw acted with a fixed purpose to conceal any wrong or that it misrepresented the sale terms. Therefore, under these circumstances, the doctrine of fraudulent concealment will not toll the running of the statute of limitations. *See Marshall*, 342 S.W.3d at 68; *Baxter*, 182 S.W.3d at 464; *Burns*, 790 S.W.2d at 2.

Because BPL cannot establish fraudulent concealment as a matter of law, the fraudulent concealment doctrine did not toll the running of the statute of limitations on BPL's fraud cause of action. *See Marshall*, 342 S.W.3d at 68; *B. Mahler Interests*, 2016 WL 4922775, at *11. Accordingly, as previously determined with the breach of contract cause of action, any potential fraud cause of action accrued in June 2000 when Choctaw sent the notice letter to BPL and subsequently refused BPL's request for information in compliance with the preferential right to

purchase provision in the JOA. BPL filed its action against Cody Texas on November 28, 2005, outside of the four-year statute of limitations. Therefore, BPL's fraud cause of action against Cody Texas is barred by the four-year statute of limitations. For this reason, Cody Texas presented prima facie proof of a meritorious ground of appeal on BPL's fraud cause of action.

Having concluded that the doctrine of fraudulent concealment did not apply to toll the running of the statute of limitations on BPL's fraud claim, and BPL's fraud cause of action against Cody Texas is barred by the four-year statute of limitations, we sustain Cody Texas's second issue with regard to BPL's fraud cause of action.

## II. Second Element: No Negligence of Its Own

To obtain a bill of review, a plaintiff must establish that its failure to file a motion for new trial or appeal was not due to any fault or negligence of its own. *Petro-Chem.*, 514 S.W.2d at 246; *Saint v. Bledsoe*, 416 S.W.3d 98, 102 (Tex. App.—Texarkana 2013, no pet.). To dispute this required element in its motion for summary judgment and establish Cody Texas was not entitled to a bill of review as a matter of law, BPL argued Cody Texas's counsel, Brooke Farnsworth, was negligent by calling the trial judge's court coordinator rather than the district clerk to discover whether the trial court had entered a final judgment.

It is undisputed that on May 20, 2013, the parties received notice that the trial court entered findings of fact and conclusions of law dated March 13, 2013. On that day, after receiving the findings, Mr. Farnsworth's staff member called the district clerk to inquire whether a judgment had been entered and was told one had not. This information was true, as the trial court did not sign the final judgment until May 31, 2000, and it was not entered until June 6, 2000. On August 2, 2013 and August 20, 2013, the same staff member called the trial judge's court coordinator to inquire whether the trial court had signed a final judgment. On each occasion, the staff member was told no final judgment had been signed. Mr. Farnsworth relied upon this information.

BPL argued that Cody Texas's failure to discover that the trial court's final judgment was signed on May 31, 2013 was caused in part by the negligence of Mr. Farnsworth. Although Mr. Farnsworth's staff member called the district clerk on May 20, 2013, BPL argued the staff member should have called the district clerk, not the trial judge's court coordinator on August 2, 2013 and August 20, 2013 to inquire whether a final judgment had been signed or entered. Had the staff member called the district clerk, not the trial judge's court coordinator, BPL argues Cody Texas would have discovered a final judgment had been signed and entered.

To support this position that Cody Texas's inability to file a timely appeal was due, in part, to its own negligence, BPL presented summary judgment evidence which consisted of an affidavit of an expert witness, Dan Pozza. In his affidavit, Mr. Pozza evaluated Mr. Farnsworth's actions and opined that:

> [i]f a lawyer undertakes to determine whether a final judgment has been entered in a particular case, a lawyer of ordinary prudence will know the distinction and will contact the district clerk, not the court coordinator. That is the standard of care. . . . To contact the court coordinator, rather than the district clerk, is a failure to use ordinary care, that is, it is a failure to do that which an attorney of ordinary prudence would do under these circumstances.

Although BPL presented summary judgment evidence to support its position, its argument fails under these facts as a matter of law. When a final judgment is signed, the district clerk of the court shall immediately give such notice to the parties or their attorneys. TEX. R. CIV. P. 306a(3). Generally, a trial court retains plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment for thirty days after its judgment is signed. TEX. R. CIV. P. 329b(d). If a timely motion for new trial or motion to modify, correct, or reform the judgment is filed, the trial court's plenary power is extended until thirty days after all such timely-filed motions are overruled. TEX. R. CIV. P. 329b(e),(g).

Here, the trial court signed the final judgment on May 31, 2013. It is undisputed the district clerk failed to provide timely notice of this final judgment as required by the Texas Rules of Civil Procedure. Because Cody Texas was not aware the final judgment had been signed, it did not file, and could not have filed, a post-judgment motion for new trial or motion to modify the final judgment.[5] Therefore, the trial court's plenary power to change, modify or reform its final judgment expired thirty days later on June 30, 2013. *See* TEX. R. CIV. P. 329b (d),(e),(g).

Even if, as Mr. Pozza opined, Mr. Farnsworth had violated the standard of care by calling the court coordinator rather than the district clerk on August 2, 2013 and August 20, 2013, any such negligence would have been inconsequential, as the trial court's plenary power had expired when the staff member made these inquiries. Even if Cody Texas had discovered on August 2, 2013 that the trial court signed the final judgment on May 31, 2013, Cody Texas still would not have been able to file a timely post-judgment motion or notice of appeal. Thus, while Mr. Pozza posits that Mr. Farnsworth was negligent on August 2nd and August 20th, Mr. Pozza does not present an opinion, nor does BPL present other summary judgment evidence, on the issue whether Mr. Farnsworth was negligent by failing to discover that the trial court signed the final judgment prior to expiration of the trial court's plenary power. In fact, Mr. Farnsworth's staff member did act in accordance with the ordinary prudence and the standard of care discussed by Mr. Pozza

---

[5] In a previous opinion, this court concluded the trial court had lost plenary power when it signed the October 9, 2013 judgment. *Cody Texas, L.P. v. BPL Expl., LTD.*, 2014 WL 1722126, at *1. In drawing this conclusion, this court allowed for the longest possible extension of the trial court's plenary power by construing, without deciding, that Cody Texas's objections to BPL's proposed judgment, filed on May 31, 2013, to be a motion to modify, correct, or reform the May 31, 2013 judgment. *Id.* (stating, "If we construe Cody Texas's Objections to Plaintiff's Proposed Judgment as a motion to modify, correct, or reform the May 31 judgment. . ."). *Id.* However, upon this present review, this construction is not possible. Here, the parties do not dispute that Cody Texas learned of the trial court's May 31 final judgment at the very earliest on October 9, 2013. Based upon this undisputed fact, Cody Texas could not have filed a motion that can be construed as a post-judgment motion for new trial or motion to modify the judgment until that date, October 9, 2013. This liberal construction made in the previous opinion for the sake of determining potential appellate jurisdiction was not a conclusive determination that Cody Texas did so file a timely post-judgment motion or a conclusive determination of the date certain that the trial court's plenary power expired. *See id.*

when she called the district clerk on May 20, 2013 to inquire whether a final judgment had been signed.

Consequently, BPL failed to present summary judgment evidence to establish conclusively or to even raise a fact issue whether Cody Texas's failure to discover or receive notice that the trial court signed the final judgment on May 31, 2013 was mixed with negligence of its own. Because BPL failed to satisfy this summary judgment burden of proof, and the facts and circumstances in this case establish conclusively that Cody Texas's failure to receive notice of the trial court's final judgment was not due to any fault or negligence of its own, the trial court erred by so finding.

Cody Texas's first issue is sustained.

## CONCLUSION

We conclude that the undisputed facts indicate that neither the discovery rule or the fraudulent concealment doctrine deferred accrual of BPL's breach of contract and fraud causes of action. Accordingly, Cody Texas had a meritorious ground for appeal of expiration of the applicable statute of limitations as a matter of law. We also conclude the undisputed facts establish Cody Texas's failure to receive notice of the trial court's final judgment dated May 31, 2013 was not mixed with any negligence of its own. It is undisputed that Cody Texas's failure to file a timely notice of appeal was caused by the official mistake of the trial court clerk's failure to provide notice of the final judgment dated May 31, 2013. Because the summary judgment record establishes conclusively all three bill-of-review elements, the trial court erred by granting BPL's motion for summary judgment, erred by denying Cody Texas's motion for summary judgment and erred by denying Cody Texas's bill of review. We therefore, reverse the trial court's summary judgment. We render judgment denying BPL's motion for summary judgment and granting Cody

Texas's motion for summary judgment.  In so doing, we render judgment granting Cody Texas's

bill of review and remand for proceedings consistent with this opinion.


Jason Pulliam, Justice