

## In the
## Court of Appeals
## Second Appellate District of Texas
## at Fort Worth

_____

No. 02-17-00386-CV

_____

HENRY PEYTON INGE III, Appellant

V.

BANK OF AMERICA, N.A., BOFA MERRILL LYNCH ASSET HOLDINGS,
INC., AND BAC HOME LOANS SERVICING, L.P., Appellees

On Appeal from the 362nd District Court
Denton County, Texas
Trial Court No. 2012-50780-367

Before Sudderth, C.J.; Gabriel and Pittman, JJ.
Memorandum Opinion by Justice Pittman

## MEMORANDUM OPINION

Appellant Henry Peyton Inge III appeals from the trial court's grant of summary judgment in favor of Appellees Bank of America, N.A.; BOFA Merrill Lynch Asset Holdings, Inc.; and BAC Home Loans Servicing, L.P. (collectively, BoA) on Inge's claims arising from his home equity loan. In five issues, he argues that: (1) the evidence attached to his summary judgment response was admissible; (2) the trial court did not grant BoA's objections to his evidence; (3) the evidence raised a question of material fact sufficient to defeat summary judgment on his breach of contract and (4) Texas Debt Collection Practices Act (TDCPA) claims, and (5) the economic loss doctrine does not apply to his claims. We affirm.

## BACKGROUND

Inge took out a home equity loan with Pulaski Mortgage Company on December 1, 2006. The Texas Home Equity Security Instrument (Deed of Trust) securing the note provided, "Borrower shall be given at the time this Extension of Credit is made, a copy of all documents signed by Borrower related to the Extension of Credit." The Deed of Trust further provided:

> Neither Borrower nor Lender may commence . . . any judicial action . . . that . . . alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party . . . of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. . . . .
>
> . . . .

All agreements between Lender and Borrower are hereby-expressly limited so that in no event shall any agreement between Lender and Borrower . . . be construed not to allow Lender 60 days after receipt of notice to comply . . . with Lender's obligations under the Extension of Credit to the full extent permitted by Section 50(a)(6), Article XVI of the Texas Constitution. Borrower understands that the Extension of Credit is being made on the condition that Lender shall have 60 days after receipt of notice to comply with the provisions of Section 50(a)(6), Article XVI of the Texas Constitution. As a precondition to taking any action premised on failure of Lender to comply, Borrower will advise Lender of the noncompliance . . . , and will give Lender 60 days after such notice has been received by Lender to comply. Except as otherwise required by Applicable Law, only after Lender has received said notice, has had 60 days to comply, and Lender has failed to comply, shall all principal and interest be forfeited by Lender.

The Deed of Trust also stated that it and the note could be assigned or sold without prior notice to Inge. BoA subsequently acquired the note and Deed of Trust.

Inge filed this lawsuit in 2012 after his unsuccessful year-long attempt to obtain a loan modification and after BoA began taking steps toward foreclosure. Inge alleged that he had been making regular payments until 2011, when he decided to seek a loan modification, and a BoA employee told him that he did not qualify because his loan was current. He asserted that in reliance on this statement, he temporarily ceased making payments in order to become delinquent and thereby qualify for modification. He alleged that after he did so, he began receiving collection letters and threats of foreclosure, and BoA returned attempted payments he made. Inge alleged that, in fact, BoA does not offer modifications for home equity loans, yet in his many communications with BoA in his attempt to modify the loan, he was never told this fact. He asserted a claim for breach of contract premised on an allegation that he had

3

not been provided with a copy of all the loan documents at closing as called for by the Deed of Trust. He also asserted claims for conspiracy, declaratory relief, and violations of Sections 392.301(a)(3), 392.303(a)(2), 392.202(b), and 393.304(a)(8) of the TDCPA and the Texas Deceptive Trade Practices Act (DTPA) through the TDCPA's tie-in statute. *See* Tex. Fin. Code Ann. §§ 392.301–.304, 392.404 (West 2016) (prohibiting certain debt collection practices and making a violation of the chapter a deceptive trade practice under the DTPA, Tex. Bus. & Com. Code Ann. § 17.41 (West 2011)). He also sought forfeiture of the loan by BoA.

BoA filed a traditional motion for summary judgment in March 2016. In November 2016, it filed a combined motion for traditional and no-evidence summary judgment. As no-evidence grounds, it asserted that Inge had no evidence of specific elements of each of his TDCPA claims.

Inge filed a response to BoA's traditional summary judgment motion but no response to BoA's no-evidence summary judgment motion. Regarding his breach of contract claim, he alleged that he had requested that BoA provide him with copies of the loan documents, but it had failed to do so, and therefore under the Deed of Trust and the note, BoA had forfeited the loan principal and interest. Regarding his TDCPA claims, he restated his claims and alleged that his attached declaration and exhibits "establish that Defendants have engaged in each of these acts." As evidence, he supplied his own twenty-two-page declaration with hundreds of pages of exhibits attached.

4

In November 2016, the trial court granted summary judgment on all of Inge's claims except the breach of contract claim. In May 2017, BoA filed a third motion for summary judgment, which asserted entitlement to judgment on Inge's breach of contract claim based on the affirmative defense of limitations. This motion asserted that Inge's breach of contract claim for an alleged failure to provide Inge with his loan documents at closing accrued at the time of closing when the documents were required to be provided, and that because the date of closing was more than four years before Inge filed suit, limitations barred his claim. The trial court granted BoA's summary judgment motion. Inge filed a motion for new trial, which was overruled by operation of law. Inge now appeals.

## DISCUSSION

On appeal, we address only Inge's third and fifth issues, as they are dispositive.

## I. Inge Did Not Raise a Fact Issue on His TDCPA Claims.

In his third issue, Inge argues that he raised a fact issue on his TDCPA claims and that the no-evidence summary judgment on those claims must be therefore reversed. Because Inge failed to adequately respond to the no-evidence motion, we disagree.

### A. Inge Failed to Argue His Section 392.304(a)(8) Claim.

Inge does not include any argument in his brief about his claim based on TDCPA Section 392.304(a)(8). *See* Tex. Fin. Code Ann. § 392.304(a)(8). Because he presents nothing for review as to that claim, we overrule his third issue as to that

claim. *See Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (stating that appellate court has discretion to waive point due to inadequate briefing); *Hotchkin v. Bucy*, No. 02-13-00173-CV, 2014 WL 7204496, at *3 (Tex. App.—Fort Worth Dec. 18, 2014, no pet.) (mem. op.) (holding that appellant's brief that included no argument on an issue presented nothing for review). To the extent Inge challenges his other non-contract, non-TDCPA claims, he has waived review of those claims for the same reason.

**B.      The Trial Court Correctly Granted Summary Judgment for BoA on Inge's Remaining TDCPA Claims.**

As for Inge's remaining claims based on the TDCPA, because he failed to adequately respond to BoA's no-evidence summary judgment motion, the trial court correctly granted no-evidence summary judgment for BoA on those claims. Although Inge filed a response to BoA's traditional motion for summary judgment, he filed no response to BoA's subsequent combined motion. Even construing his response to the traditional motion as a response to both motions, the response is insufficient. Inge included a section addressing his TDCPA claims, but he did nothing more than list his claims and then set out the following paragraph:

> As established above, these amount to claims under the TDCPA directly and as a tie-in to the DTPA. There is no question, however, that Defendants have engaged in this impermissible activity. Plaintiff's declaration and the documentation attached thereto establish that the Defendants have engaged in each of these acts by failing to acknowledge in their reporting that the Loan was non-recourse *and* that Plaintiff disputed it. It also establishes that in attempting to collect certain fees and other charges, Defendants sought recovery of amounts not

6

authorized under the Loan document. Finally, Defendants failed to adequately respond to Plaintiff's notice of dispute.

As evidence, Inge merely cited generally to "Inge Dec. (Ex. A), *et seq.*," i.e., his twenty-two-page declaration and its two-hundred-plus pages of exhibits. He did not direct the trial court to any specific evidence or any specific part of the evidence that he claimed raised a fact issue. Nor did he explain how any of the attached evidence raised a fact issue on any challenged element of any of his TDCPA claims. This response wholly fails to "point out to the trial court the evidence that raises a fact issue" and was therefore inadequate to defeat summary judgment. *Dyer v. Accredited Home Lenders, Inc.*, No. 02-11-00046-CV, 2012 WL 335858, at \*3 (Tex. App.—Fort Worth Feb. 2, 2012, pet. denied) (mem. op.); *see* Tex. R. Civ. P. 166a cmt. (providing that to defeat a no-evidence summary judgment motion, "the respondent is not required to marshal its proof; its response need only **point out evidence** that raises a fact issue on the challenged elements" (emphasis added)); *In re A.J.L.*, No. 14-16-00834-CV, 2017 WL 4844479, at \*4 (Tex. App.—Houston [14th Dist.] Oct. 26, 2017, no pet.) (mem. op.) ("[G]eneral citation to voluminous records is not a proper response to a no-evidence motion for summary judgment."); *Burns v. Canales*, No. 14-04-00786-CV, 2006 WL 461518, at \*3 (Tex. App.—Houston [14th Dist.] Feb. 28, 2006, pet. denied) (mem. op.) (holding that a response to a no-evidence summary judgment motion was insufficient to satisfy the nonmovant's burden when "[t]he response contained no citation to any authority, no citation to specific evidence, no

reference to any fact, and no argument"). Accordingly, the trial court did not err in granting summary judgment on these claims. We overrule Inge's third issue.

Because we have overruled Inge's third issue, we need not address his fourth issue, in which he argues that BoA was not entitled to summary judgment on his TDCPA claims on the ground that they were barred by the economic loss doctrine.

## II.    Inge Did Not Raise a Fact Issue on His Contract Claim.

In Inge's fifth issue, he argues that a genuine issue of material fact exists as to whether BoA breached the Deed of Trust when it neither provided him with a complete set of copies of the documents he signed at closing nor reissued the loan within sixty days of his notice that he had not been provided with the copies. He argues that because BoA was not the original lender at closing, it could not be liable for failing to provide any documents at that time, and thus the statute of limitations did not begin running on his claim against BoA until 2012, when he provided BoA with notice that he had not received the loan documents. He asserts that when BoA received this notice, it had to either provide him with the closing documents or reissue the loan, and that because it did neither, it had to forfeit the loan. As discussed below, Inge's arguments are without merit.

We first address Inge's argument about whether the claim against BoA could begin to run at the time of closing. We agree with Inge that he could not have sued BoA in 2006 for breach of the Deed of Trust because it had not yet been assigned that instrument. But Inge's argument ignores the effect of the assignment. For BoA

8

to have any liability for a breach of the Deed of Trust, it had to have assumed Pulaski's obligations under the instrument. *See Jones v. Cooper Indus., Inc.*, 938 S.W.2d 118, 124 (Tex. App.—Houston [14th Dist.] 1996, writ denied) ("The assignee of a contract is not bound to perform the assignor's obligations under the contract unless they are expressly or impliedly assumed by the assignee."). In the assignment of the note and Deed of Trust, BoA accepted the assignment of those instruments together with the "obligations therein described." It therefore stands in Pulaski's shoes and is liable *to the same extent that Pulaski would have been. See Am. Homeowner Pres. Fund, LP v. Pirkle*, 475 S.W.3d 507, 517 (Tex. App.—Fort Worth 2015, pet. denied) ("It is axiomatic that an assignee stands in the shoes of its predecessor in interest."); *Capitan Enters., Inc. v. Jackson*, 903 S.W.2d 772, 775 (Tex. App.—El Paso 1994, writ denied) ("Generally, a party assuming contractual liability is liable to the same extent as the party from whom it assumed the contract[;] . . . an assignee to a contract 'stands in the shoes' of the assignor."). Thus, Inge may sue BoA instead of Pulaski for breach of the Deed of Trust, but he must do so subject to the statute of limitations that Pulaski could have raised had the Deed of Trust not been assigned.[1] *See Jackson*, 903 S.W.2d at 775.

---

[1]Inge appears to overlook the fact that if BoA had not assumed Pulaski's obligations under the Deed of Trust, it would have no duties to Inge under that instrument on which Inge could base his breach of contract claim. *See Jones*, 938 S.W.2d at 124.

Inge argues that his providing notice to BoA of its failure to provide the documents at closing was a condition precedent to BoA's contractual obligation to comply with the terms of the contract, and therefore limitations did not begin to run until he did so. We disagree. A party's failure to perform its obligations generally constitutes a breach of those obligations. *Cody Tex., L.P. v. BPL Expl., Ltd.*, 513 S.W.3d 522, 535 (Tex. App.—San Antonio 2016, pet. denied) ("A breach of contract occurs when a party fails or refuses to do something he is contractually obligated to do."). Accordingly, if BoA's predecessor did not comply with its obligations under the Deed of Trust, it breached those obligations. *See id.* The Deed of Trust stated that Inge "shall be given at the time this Extension of Credit is made, a copy of all documents signed by [Inge] related to the Extension of Credit." The Deed of Trust did not state that BoA or its predecessor had no obligation to perform until Inge requested it to. The Deed of Trust did not authorize BoA to wait until it received notice, years *after* closing, to perform its obligation to provide the closing documents. While the Deed of Trust required Inge to provide notice to BoA as a precondition to pursuing any legal remedies, that provision gave BoA an opportunity to cure a breach that had already occurred. It did not trigger BoA's obligation to perform. The Deed of Trust is clear: breach first, then notice.

BoA asserted in its third summary judgment motion that Inge's claim was barred by limitations because he did not bring this claim until more than four years after closing. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (West 2015); *Cody Tex.*,

10

513 S.W.3d at 534 (noting that under Tex. Civ. Prac. & Rem. Code Ann. § 16.051, breach of contract claims must be brought within four years of the date the claim accrued). In the motion, BoA noted that Inge did not bring his claim until September 24, 2012, which was nearly six years after closing, and it attached a copy of the note and Deed of Trust, both executed on December 1, 2006. Thus, BoA established that Inge sued it more than four years after the alleged breach.

The Texas Supreme Court's opinion in *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 549 (Tex. 2016), does not call for a different result. In that case, the Texas Supreme Court held that a lien securing a constitutionally noncompliant home-equity loan is neither void nor voidable; rather, it is constitutionally invalid and remains invalid unless and until it is cured. *Id.* at 549; *see also Kyle v. Strasburger*, 522 S.W.3d 461, 465 (Tex. 2017). Because the invalid lien remains invalid until cured, no statute of limitations applies to a homeowner's right to quiet title to real property encumbered by the invalid lien. *Wood*, 505 S.W.3d at 549 ("We fail to glean from the language of the cure provisions any indication that the Legislature or the voters who approved the addition of home-equity loans to the constitutional homestead provisions intended that liens securing constitutionally noncompliant loans would be validated merely by the passage of time."). Because BoA's lien is valid, *Wood* does not apply.[2]

---

[2]The Texas constitution provides that a lender may not foreclose on a lien under a home equity loan unless the loan is "made on the condition that" at the time

11

Inge's breach of contract claim was not premised on BoA's failure to make the terms of the note and Deed of Trust compliant with the constitutional requirements for creation of a valid lien. *See Garofolo*, 497 S.W.3d at 478 (holding that "[a] lender that includes the terms and conditions [required by the Texas constitution] in the loan at origination but subsequently fails to honor them might have broken its word, but it has not violated the constitution"). His claim was premised on BoA's predecessor's failure to perform under the Deed of Trust's terms. BoA's summary judgment evidence established that closing occurred on December 1, 2006, a fact with which Inge agrees. The statute of limitations began to run on that date when BoA failed to provide Inge with copies of the closing documents.

Inge cites *Garofolo* for the proposition that BoA became subject to forfeiture of the loan's principle and interest under a breach of contract claim no earlier than sixty days after Inge's notice to BoA. *See id.* at 484 (stating that a borrower may seek

of the extension of credit, "the owner of the homestead shall receive a copy of the final loan application and all executed documents signed by the owner at closing related to the extension of credit." Tex. Const. art. XVI, § 50(a)(6)(Q)(v). Inge's home equity loan satisfies that requirement because the Deed of Trust obligated the lender to provide Inge with a copy of the loan documents at closing. Because the Deed of Trust incorporated the Texas constitution's prerequisite for the creation of a valid lien, the lien created by the Deed of Trust is valid. *See* Tex. Const. art. XVI, § 50(a)(8)(c) (providing that no lien on the homestead "shall ever be valid unless it secures a debt described by this section"); *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 478 (Tex. 2016) (holding that the constitution "does not constitutionally guarantee a lender's post-origination performance of a loan's terms and conditions" and that "[f]rom a constitutional perspective, compliance is measured by the loan as it exists at origination and whether it includes the terms and conditions required to be foreclosure-eligible").

forfeiture through a breach of contract claim when the lender, after notice from the borrower, fails to correct its deficient performance of certain obligations under the loan). *Garofolo* does not help Inge because it does not address the limitations defense raised by BoA. *See id.* at 475.

Because, under the terms of the Deed of Trust, BoA's predecessor had to provide loan documents to Inge at closing, Inge's claim began to run on the date of closing, when, according to Inge, he did not receive the loan documents. And because he brought this suit more than four years after the alleged breach, his breach of contract claim is barred by limitations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.051; *Cody Tex.*, 513 S.W.3d at 534. We overrule Inge's fifth issue.

Having overruled Inge's fifth issue, we need not address his first and second issues, which address the admissibility of his summary judgment evidence. *See* Tex. R. App. P. 47.1.

## CONCLUSION

Having overruled Inge's third and fifth issues, which are dispositive of his appeal, we affirm the trial court's judgment.

/s/ Mark T. Pittman
Mark T. Pittman
Justice

Delivered: November 15, 2018

13