**Jack J. GRYNBERG, individually and d/b/a Grynberg Petroleum Company, Appellant,**

v.

**GREY WOLF DRILLING COMPANY, L.P., Appellee.**

**No. 14–08–00101–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

July 28, 2009.

Rehearing Overruled Oct. 8, 2009.

Darrin Walker, Kingwood, TX, Roger Jatko, Greenwood Village, CO, for appellants.

Geoffrey H. Bracken, Jeffrey Stewart Davis, Peter Scaff, Houston, TX, Cynthia Hollingsworth, Stacy R. Obenhaus, Dallas, TX, for appellees.

Panel consists of Justices YATES, GUZMAN, and SULLIVAN.

## OPINION

EVA M. GUZMAN, Justice.

In this contract case, appellant Jack J. Grynberg, individually and d/b/a Grynberg Petroleum Company ("Grynberg)" paid for services rendered by Grey Wolf Drilling Company, L.P. ("Grey Wolf") with a check for less than the invoiced amount. Grey Wolf sued to collect the remaining charges, and Grynberg asserted the affirmative defense of accord and satisfaction. On cross-motions for summary judgment, the trial court ruled in Grey Wolf's favor. Because neither party established a right to judgment as a matter of law, we reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 12, 2006, appellant oil well operator Grynberg contracted with appellee Grey Wolf for the provision of drilling services at an oil well known as Hiawatha State 2–36 in Moffat County, Colorado. Grey Wolf commenced operations on September 30, 2006 and concluded them on November 13, 2006. Between November 6, 2006 and March 7, 2007, Grey Wolf sent Grynberg five invoices as follows:

a. Invoice No. 325–2210, dated November 6, 2006, presents charges totaling $493,467.75 for mobilization, daywork, and boiler usage;

b. Invoice No. 326–1579, dated November 7, 2006, presents third-party trucking charges of $25,770.00 for transporting Grey Wolf's equipment to the site;

c. Invoice No. 325–2219, dated November 20, 2006, presents charges in the total amount of $259,898.80, representing $4,900.00 for boiler usage and an additional charge of $254,998.80 for demobilization. Grey Wolf explained that this charge was assessed pursuant to an "early-termination" provision in the contract addressing compensation to be paid if Grynberg terminated the contract prior to the commencement of operations;

d. Invoice No. 326–1583, dated December 7, 2006, in the amount of $315.90 for third-party charges; and

e. Invoice No. 326–1600, dated March 7, 2007, presenting third-party trucking charges in the amount of $59,190.00 for removing Grey Wolf's property to the site.

The face of each invoice included instructions to remit payment to Grey Wolf at a Houston post-office box and to direct billing inquiries to Grey Wolf's office in Casper, Wyoming.

By letter dated December 20, 2006, Grynberg wrote to Grey Wolf at its Wyoming office and stated that he had "no intention of honoring" Invoice No. 325–2219 for $259,898.80 because Grey Wolf used "a junk rig that was in no condition to drill." Grynberg further stated that the contract's early-termination compensation provisions did not apply, and he returned the invoice. On March 21, 2007, Grynberg returned Invoice No. 326–1600 in the amount of $59,190.00 to Grey Wolf, stating, "This is an unheard[-]of billing.... There is nothing in the contract between us because you pay for moving in—not for moving out.... Sending a bill four months late is the optimum of gall...." Grynberg sent the letter and check to Grey Wolf's Houston post-office box, and sent a copy to Grey Wolf's Wyoming address.

Finally, Grynberg wrote to Grey Wolf on March 22, 2007 as follows:

Re: Hiawatha State 2–36

*Invoice No. 325–2210*

Gentlemen:

We pride ourselves in paying our bills very promptly but your bill was unrealistic and we expected someone from Grey Wolf to call us. To this date, we have not had a call so we cut our check # 1095 as full payment for the work performed. We have no intention of paying for a junk rig with inexperienced crews and poor supervision. . . .

Accordingly, your total bill came up to $227,417.30. Attached is our check and on the backside it says it is paid in full for your charges.

Grynberg enclosed a check for $227,417.20, on the back of which it is stated, "Payment in full of invoices 325–2210, 326–1583 & 326–1597 [sic]. Endorsement by payee releases Grynberg Petroleum Co. and Jack J. Grynberg from any further claim or liability thereon." Grynberg sent the letter and check to Grey Wolf's Houston post-office box, with a copy to Grey Wolf's Wyoming address. Grey Wolf cashed the check and sued on the contract for $612,166.25, asserting quantum meruit and unjust enrichment as alternative theories of recovery. Grynberg denied the existence of an outstanding account and asserted the affirmative defenses of accord and satisfaction and payment.

Grynberg moved for traditional summary judgment solely on the affirmative defense of accord and satisfaction. Grey Wolf moved for traditional summary judgment on the ground that "Grynberg waived its right to challenge its payment obligations" because it did not "object in writing within 15 days of delivery of the invoice and to deliver any objection to Grey Wolf's business office located at 10370 Richmond Avenue, Houston, Texas 77042." In separate orders signed on October 12, 2007, the trial court initially denied both summary-judgment motions, but in an order entered on November 6, 2007, it vacated the "the earlier order dated October 27, 2007"[1] and granted summary judgment in Grey Wolf's favor. Grynberg's motion for new trial was overruled by operation of law, and this appeal timely ensued.

## II. Issues Presented

In two issues, Grynberg challenges the trial court's orders granting Grey Wolf's motion for summary judgment and denying his own.

## III. Standard of Review

■ We review summary judgments de novo.[2] In a traditional motion for summary judgment, the movant has the burden of showing that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[3] We take as true all evidence favorable to the nonmovant, and indulge every reasonable inference in the nonmovant's favor.[4] Once the movant establishes its right to summary judgment as a matter of law, the burden shifts to the non-movant to present evidence raising a genuine issue of material fact.[5] Summary judgment for a defendant is proper only when the defendant negates at least one element of each of the plaintiff's theories of recovery, or pleads and conclusively establishes each element of an

1. It appears from this language that the trial court vacated only the October 12, 2007 order denying Grey Wolf's motion for summary judgment.

2. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005).

3. Tex.R. Civ. P. 166a(c); *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997).

4. *See Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 157 (Tex.2004).

5. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678–79 (Tex.1979).

affirmative defense.[6] Evidence is conclusive only if reasonable people could not differ in their conclusions.[7] When, as here, both sides move for summary judgment, each bears the burden of establishing that it is entitled to judgment as a matter of law; neither side can prevail due to the other's failure to discharge its burden.[8]

On appeal, we review all summary-judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered.[9] We may affirm the judgment, reverse and render a judgment for the other side if appropriate, or reverse and remand if neither party has met its summary-judgment burden.[10]

## IV. ANALYSIS

### A. Grey Wolf's Motion for Summary Judgment

■ To obtain traditional summary judgment on its own cause of action, a plaintiff must establish every element of its claim as a matter of law.[11] To prevail on a claim for breach of contract, a plaintiff must establish (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a

result of the breach.[12] Although Grey Wolf is the plaintiff in this case, its traditional summary-judgment motion was not based on an assertion that Grey Wolf established the elements of its breach-of-contract claim as a matter of law. Instead, Grey Wolf moved for summary judgment only on the grounds that (1) Grynberg waived any complaint about the amounts billed by Grey Wolf because he did not send notice of each dispute to Grey Wolf's Houston street address within 15 days of receiving a contested invoice, and (2) Grynberg's affirmative defense of accord and satisfaction fails.

### 1. Grey Wolf's Affirmative–Defense Ground

■ The failure of Grynberg's affirmative defense, even if proved, does not present a basis on which summary judgment properly could have been granted in Grey Wolf's favor. In the summary-judgment context, proof of an affirmative defense is a basis on which a defendant may defeat a plaintiff's claim even if the plaintiff established every allegation in its pleadings, but unless the plaintiff has first established its entitlement to judgment as a matter of law, the failure of an affirmative defense cannot establish the plaintiff's right to judgment.[13] Thus, in analyzing Gryn-

**6.** *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997).

**7.** *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex.2005).

**8.** *City of Garland v. Dallas Morning News*, 969 S.W.2d 548, 552 (Tex.App.-Dallas 1998) (en banc), *aff'd*, 22 S.W.3d 351 (Tex.2000).

**9.** *Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001); *Valence Operating Co.*, 164 S.W.3d at 661.

**10.** *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205

S.W.3d 46, 50 (Tex.App.-Dallas 2006, pet. denied).

**11.** TEX R. CIV. P. 166a; *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Ohio Cas. Ins. Co. v. Time Warner Entm't Co., L.P.*, 244 S.W.3d 885, 888 (Tex.App.-Dallas 2008, pet. denied).

**12.** *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.-Houston [14th Dist.] 2005, no pet.).

**13.** *See Clear Creek Basin Auth.*, 589 S.W.2d at 678 ("Summary judgments must stand on their own merits, and the non-movant's failure to answer or respond cannot supply by default the summary judgment proof neces-

berg's challenge to the judgment in Grey Wolf's favor, we need consider only whether Grey Wolf established as a matter of law that under the unambiguous terms of the contract, Grynberg contractually waived any billing dispute that was not raised by a timely notice sent to Grey Wolf's Richmond Avenue address.

### 2. Grey Wolf's Waiver Argument

 Grey Wolf's contractual-waiver argument requires us to determine the effect of key provisions of the parties' agreement. Our primary concern in interpreting a contract is to ascertain the true intent of the parties as expressed therein.[14] We give terms their plain, ordinary, and generally accepted meaning unless the contract shows the parties used them in a technical or different sense.[15] Ordinarily, the writing alone is sufficient to express the parties' intentions, "for it is objective, not subjective, intent that controls."[16] To the extent of any conflict, specific provisions control over more general ones.[17]

 Here, Grey Wolf's waiver argument is based on inferences drawn from two contractual provisions. Section 5.2 of the contract is a specific provision governing the time for making payments or raising disputes, and section 24 is a more general contract provision concerning the address to which payments and notices are to be sent:

### 5. TIME OF PAYMENT

Payment is due by Operator to Contractor as follows: . . .

**5.2 Disputed Invoices and Late Payment:** Operator shall pay all invoices within ___30___ days after receipt except that if Operator disputes an invoice or any part thereof, Operator shall, within fifteen days after receipt of the invoice, notify Contractor of the item disputed, specifying the reason therefor, and payment of the disputed item may be withheld until settlement of the dispute, but timely payment shall be made of any undisputed portion. Any sums (including amounts ultimately paid with respect to a disputed invoice) not paid within the above specified days shall bear interest at the rate of ___one___ percent or the maximum legal rate, whichever is less, per month from the due date until paid. If Operator does not pay undisputed items within the above stated time, Contractor may suspend operations or terminate this contract as specified under Subparagraph 6.3.

. . .

### 24. NOTICES AND PLACE OF PAYMENT

Notices, reports, and other communications required or permitted by this Contract to be given or sent by one party to the other shall be delivered by hand, mailed, digitally transmitted or telecopied to the address hereinabove shown. All sums payable hereunder to Contractor shall be payable at its ad-

sary to establish the movant's right."); *Garcia v. John Hancock Variable Life Ins. Co.*, 859 S.W.2d 427, 430 (Tex.App.-San Antonio 1993, writ denied) ("Unless the movant/defendant conclusively establishes its affirmative defense, the non-movant/plaintiff has no burden in response to a motion for summary judgment filed on the basis of an affirmative defense.").

**14.** *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex.2006).

**15.** *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996).

**16.** *Matagorda County Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 740 (Tex.2006) (per curiam) (quoting *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968)).

**17.** *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133–34 (Tex.1994).

dress hereinabove shown unless otherwise specified herein.

Grey Wolf's only address identified in the contract is an office on Richmond Avenue in Houston; thus, Grey Wolf contends that Grynberg had fifteen days after the receipt of each invoice in which to preserve any challenge to the charges by sending a notice of the dispute to Grey Wolf's Richmond Avenue address. Because Grynberg instead sent notices of his billing disputes to the addresses Grey Wolf identified on its invoices—i.e., its Houston post-office box, to which Grey Wolf instructed Grynberg to send payments, and its Wyoming office, to which it required Grynberg to direct billing inquiries—Grey Wolf argues that Grynberg waived the right to dispute the charges.

But Grey Wolf's inference of waiver is inconsistent with the contract's plain language, which sets forth a different consequence for the failure to timely dispute charges. Read together, sections 5.2 and 24 provide that if Grynberg timely sends notice of a dispute to Grey Wolf's Richmond Avenue address, then "payment of the disputed item may be withheld until settlement of the dispute." Items that are not timely disputed must be paid within thirty days, and sums that are not timely paid—regardless of whether the sum pertains to a disputed invoice—accrue interest from the due date until paid. The contract further provides that if Grynberg fails to timely pay an undisputed charge, then Grey Wolf "may suspend operations or terminate [the contract] as specified under Subparagraph 6.3" of the contract. This section governs early termination, and provides in relevant part as follows:

### 6.3 Early Termination:

. . .

**(c) By Contractor:** Notwithstanding the provisions of Paragraph 3 with respect to the depth to be drilled, . . . if . . ., following three business days['] prior written notice to Operator if Operator does not pay Contractor within the time specified in Subparagraph 5.2 all undisputed items due and owing, Contractor may, at its option (1) elect to terminate further performance of any work under this Contract and Contractor's right to compensation shall be as set forth in Subparagraph 6.4 hereof, or (2) suspend operations until payment is made by Operator in which event the standby time rate contained in Subparagraph 4.6 shall apply until payment is made by Operator and operations are resumed.

Thus, under the plain language of the contract, the effect of Grynberg's failure to timely dispute charges was not to waive the challenge, but to give Grey Wolf the option, upon three business days' written notice, to terminate or suspend operations for nonpayment.[18] And although the time for Grey Wolf to exercise its early-termination option has passed, another consequence of Grynberg's delay remains in effect: pursuant to section 5.2, interest continues to accrue on all charges that ultimately are found to be owed. Contrary to Grey Wolf's argument, however, no contract terms provide that if Grynberg neither timely disputes nor timely pays the invoice, the charges are established or the dispute is waived.

Because neither of the grounds on which Grey Wolf moved for summary judgment provide a basis for affirmance, we sustain Grynberg's first issue and reverse the trial court's judgment.

18. Grey Wolf's final invoice presenting charges for removing its equipment from the site was time disputed.

## B. Grynberg's Motion for Summary Judgment

Grynberg moved for traditional summary judgment on the sole ground that Grey Wolf's claim is barred by accord and satisfaction. As in its cross-motion for summary judgment, Grey Wolf responded that any objection to the invoices were waived by Grynberg's failure to dispute the invoices within fifteen days [19] and by his failure to send notice of the dispute to the Grey Wolf's Richmond Avenue address as specified in the contract. On appeal, both parties' arguments concerning Grynberg's motion focus on section 3.311 of the Texas Business and Commerce Code, which governs accord and satisfaction by the use of an instrument. This section provides in relevant part as follows:

(a) Subsections (b)-(d) apply if a person against whom a claim is asserted proves that:

(1) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim;

(2) the amount of the claim was unliquidated or subject to a bona fide dispute; and

(3) the claimant obtained payment of the instrument.

(b) Unless Subsection (c) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

. . .

(d) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.

Tex. Bus. & Com.Code Ann. § 3.311 (Vernon 2002). For an instrument to be considered tendered and conspicuously identified as payment in full satisfaction of a disputed claim as required by section 3.311(a)(1), (b), or (d),

There must be an unmistakable communication to the creditor that tender of the lesser sum is upon the condition that acceptance will constitute satisfaction of the underlying obligation. It has been said that the conditions must be made plain, definite and certain; that the statement accompanying the tender of a sum less than the contract price must be so clear, full and explicit that it is not susceptible of any other interpretation; that the offer must be accompanied with acts and declarations which the creditor is "bound to understand." [20]

Here, however, Grynberg's statements on the check and the accompanying cover letter are not so "so clear, full and explicit as to be susceptible to no interpretation other than accord and satisfaction of all outstanding invoices." [21]

19. Although the letter was sent to the addresses identified in the invoice rather than the address described in the contract, Grynberg's challenge to Invoice No. 326–1600, in which Grey Wolf billed Grynberg $59,190 for third-party trucking charges, was timely.

20. *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex.1969) (citations omitted).

21. *See Metromarketing Servs., Inc. v. HTT Headwear, Ltd.*, 15 S.W.3d 190, 198 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

The only invoice specifically identified in the cover letter is Invoice No. 325–2210. Although Grynberg further stated in the letter that he enclosed a check for $227,417.30 "as full payment for the work performed," and that on the back of the check, "it says it is paid in full for your charges," both of these statements are factually incorrect. The amount of the check is misstated, and contrary to Grynberg's representation, the back of the check does not indicate that it is tendered as full payment for Grey Wolf's services. To the contrary, according to the notation on the check, the payment was offered only in satisfaction of Invoice Nos. 325–2210, 326–1583 and "326–1597."[22] Neither the cover letter nor the restrictive endorsement on the check mention Invoice No. 325–2219 for $259,898.80 or Invoice No. 326–1600 for $59,190.00.[23] At a minimum, the variance between the language of the cover letter and that of the restrictive endorsement on the back of the check create an issue of material fact as to what invoices were intended to be released.

Because Grynberg failed to establish his entitlement to summary judgment under section 3.311(a), (b), or (d) of the Business and Commerce Code, we conclude that the trial court did not err in denying Grynberg's motion for summary judgment. We therefore overrule Grynberg's second issue without reaching Grey Wolf's additional argument that, because Grynberg's letter and check of March 22, 2007 were not sent to Grey Wolf's Richmond Avenue address identified in the contract, Grynberg failed to meet his summary-judgment burden under section 3.311(c)(1).[24]

## V. CONCLUSION

Because neither party established a right to judgment as a matter of law, we reverse the trial court's judgment and remand the case for further proceedings in accordance with this opinion.

---

**22.** Although there is no such invoice, this may be a clerical error. Grynberg may have intended to refer instead to Invoice No. 326–1579 in the amount of $25,770.00.

**23.** From the text of the cover letter, it appears that Grynberg does not dispute Invoice No. 326–1583 in the amount of $315.90.

**24.** Grey Wolf contends that, for the purposes of the following section of the statute, notices of claim disputes were required by the contract to be sent to its office on Richmond Avenue in Houston:

　(c) Subject to Subsection (d), a claim is not discharged under Subsection (b) if either of the following applies:

(1) The claimant, if an organization, proves that:

　(A) within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted that communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to a designated person, office, or place; and

　(B) the instrument or accompanying communication was not received by that designated person, office, or place.

TEX. BUS. & COM CODE ANN. § 3.311(c)(1).