# NO. 12-17-00095-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *KEITH WRIGHT AND BELINDA MELANCON SOUTHERN, APPELLANTS* | § | *APPEAL FROM THE 217TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *JOHNNA C. HOOKER, MARY SANFORD, BRANDY MIRELES AND RYAN BREWER, APPELLEES* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Keith Wright, city manager for the City of Lufkin, and Belinda Melancon Southern, director of finance for the City of Lufkin, in their official capacities, appeal the trial court's order granting summary judgment for Johnna Hooker, Mary Sanford, Brandy Mireles, and Ryan Brewer. Appellants raise five issues on appeal. We reverse and remand in part, and reverse and render in part.

## BACKGROUND

Appellees were individually involved in separate motor vehicle accidents alleged to have been caused by the negligence of a third party. Each Appellee was transported to the hospital and treated by the City of Lufkin emergency medical services (EMS) following the accidents. Thereafter, EMS filed medical services liens, pursuant to Chapter 55 of the property code, against each Appellee's causes of action resulting from their respective motor vehicle accidents.

Appellees later sued Appellants, seeking a declaratory judgment that EMS did not timely bill Appellees' respective health insurance policies and was therefore limited in its recovery to the amount Appellees would have owed had EMS timely billed Appellees' health insurance

carriers pursuant to Chapter 146 of the Texas Civil Practice and Remedies Code. Appellees also sought a declaratory judgment that EMS's liens were invalid under section 55.004(g)(3) of the property code. Appellees sought an injunction requiring EMS to withdraw the liens, cease collection efforts, and cease filing liens in violation of Chapter 146 of the Texas Civil Practice and Remedies Code and Chapter 55 of the Texas Property Code.

Southern, as director of finance, handles the billing for EMS. She testified at a deposition regarding EMS's billing practices. She explained that when EMS transports a patient who was injured in a motor vehicle accident, the billing personnel (biller) obtains an accident report from the police department to determine the at fault party's motor vehicle insurance information. The biller then contacts the motor vehicle insurance company to determine if an injury claim has been filed on the policy. If an injury claim has been filed, the biller submits EMS's bill to the at fault party's motor vehicle insurance carrier for payment. If a claim is not filed within several days of the accident, the biller submits the charges to the patient's health insurance carrier, if the patient has an active health insurance policy.

Southern testified that when an injury claim is filed and the bill is submitted to the motor vehicle insurer, the biller monitors the account and maintains contact with the insurance adjuster until the claim is paid. If, during pendency of the claim, the biller believes the injury claim will be unsuccessful, the biller withdraws the bill from the motor vehicle insurer and submits the bill to the patient's health insurance provider. If the patient hires an attorney to pursue a motor vehicle accident claim, EMS typically files a lien against the patient's cause(s) of action.

Southern explained that EMS has a contract with Medicare and Medicaid, but not with any private health insurance carriers. Because EMS does not contract with private health insurance carriers, if EMS submits the bill to a private health insurance carrier, it does not know prior to receiving the carrier's response if or what percentage of the total charges the carrier will pay. If EMS submits a bill to a private health insurer or a motor vehicle insurer and receives partial payment, EMS bills the patient for any remaining balance. Southern testified that EMS did not bill any of the Appellees' health insurance policies, and that EMS filed a release of Sanford's lien.

During the pendency of the litigation, Appellees filed a traditional motion for summary judgment. Appellants filed a written response asking the trial court to deny Appellees' motion,

2

and requesting the court grant summary judgment in their favor.[1]   The trial court granted summary judgment in favor of Appellees and entered a judgment finding that Appellants violated Chapter 55 of the property code by filing liens against Appellees' causes of action "even though Defendants were entitled to bill Plaintiffs' medical insurance."  The judgment further enjoined Appellants from continuing the practice of filing EMS liens against patients who have "coverage under a private medical indemnity plan or program from which Lufkin EMS is entitled to recover payment for services under an assignment of benefits or similar right."  This appeal followed.

## SUMMARY JUDGMENT

Appellants present four issues challenging the trial court's summary judgment rulings.[2] They contend that: (1) the trial court erred in its interpretation of section 55.004(g)(3) of the property code because EMS has no recourse against a health insurance provider with which it does not have a contract; (2) Appellees' did not demonstrate that they had coverage under a private medical indemnity plan to which EMS had been given an assignment of benefits or other similar right; (3) Hooker did not execute an assignment of benefits; and (4) Sanford's claims are moot because EMS released her lien prior to filing suit.  Appellants urge this Court to reverse the trial court's judgment and enter a take nothing judgment in Appellants' favor.

Appellees in turn, argue that the trial court correctly granted their summary judgment motion because section 55.004(g)(3) should be interpreted to mean that EMS is not entitled to file liens for services if EMS has a right to be paid by a patient's private insurance carrier.  They further argue that EMS's lien as to Hooker's causes of action is invalid because it "filed a lien for $1,202.00 against Ms. Hooker despite the statute explicitly limited the maximum charge covered under the lien to $1,000."  Appellees urge this Court to affirm the trial court's order granting summary judgment.

---

[1] Appellees' motion was entitled cross-motion for summary judgment.  During oral argument, Appellees' counsel clarified that Appellees sought no affirmative relief, and that their cross motion was a no-evidence motion for summary judgment.

[2] The trial court's written order made no mention of Appellees' Chapter 146 claims.  In their appellate brief, Appellees acknowledge abandoning their claims for declaratory judgment pursuant to Chapter 146 of the civil practice and remedies code.  Thus, we need not address Appellants' fifth issue, which relates solely to Appellees' Chapter 146 claims.  *See* TEX. R. APP. P.  47.1.

**Standard of Review**

Declaratory judgments rendered by summary judgment are reviewed under the same standards that govern summary judgments generally. *Drake Interiors, L.L.C. v. Thomas*, 433 S.W.3d 841, 846 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). We review a summary judgment de novo. *Id.*; *see also* *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We take as true all evidence favorable to the non-movant, and indulge every reasonable inference in the non-movant's favor. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004); *Grynberg v. Grey Wolf Drilling Co., L.P.*, 296 S.W.3d 132, 135 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

Summary judgment for a defendant is appropriate only when he negates at least one element of each plaintiff's theories of recovery, or pleads and conclusively proves each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). When, as here, both sides move for summary judgment, each bears the burden of establishing that it is entitled to judgment as a matter of law and neither side can prevail due to the other's failure to discharge its burden. *Drake Interiors*, 433 S.W.3d at 847; *Grynberg*, 196 S.W.3d at 136.

On appeal, we review the summary judgment evidence, determine all questions presented, and render such judgment as the trial court should have rendered. *Grynberg*, 196 S.W.3d at 136. We may affirm the judgment, reverse and render a judgment for the other side if appropriate, or reverse and remand if neither party has met its summary judgment burden. *Drake Interiors*, 433 S.W.3d at 847; *Grynberg*, 296 S.W.3d at 136.

**Chapter 55 Liens**

The hospital lien statute was enacted "to provide hospitals an additional method of securing payment of medical services, thus encouraging the prompt and adequate treatment of accident victims" and reducing hospital costs. *McAllen Hosps., L.P. v. State Farm Cty. Mut. Ins. Co. of Tex.*, 433 S.W.3d 535, 537 (Tex. 2014) (quoting *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 309 (Tex. 1985)); TEX. PROP. CODE ANN. § 55.002 (West 2014). The statute allows the hospital to file a lien on the cause of action of a patient who receives hospital services for injuries caused by an accident that is attributed to the negligence of another individual if the patient is admitted to the hospital within seventy-two hours of the accident. *See*

TEX. PROP. CODE ANN. § 55.002(a).  The lien also attaches to the proceeds of a settlement of the patient's cause of action or to damages awarded by a judgment.  *See id*. § 55.003(a)(2)-(3) (West 2014).

In 2003, the Legislature expanded the statute to include a lien for EMS providers who treat patients for injuries caused by accidents attributable to the negligence of another, as long as the treatment is received within seventy two hours after the accident.  Act of May 31, 2003, 78th Leg., R.S. ch. 337, § 1, 2003 TEX. SESS. LAW. SERV. 1468 (West 2003) (*codified at* TEX. PROP. CODE ANN. § 55.002(c)).  Section 55.004 states that an emergency medical services lien does not cover charges (1) for services that exceed a reasonable and regular rate for the services; (2) by the EMS provider related to any services for which the EMS provider has accepted insurance benefits or payment under a private medical indemnity plan or program, regardless of whether the benefits or payments equal the full amount of the charges for those services; or (3) by the EMS provider for services provided if the injured individual has coverage under a private medical indemnity plan or program from which the provider is entitled to recover payment for the provider's services under an assignment of benefits or similar right.  TEX. PROP. CODE ANN. § 55.004(g)(1)-(3).

**Appellees' Traditional Motion for Summary Judgment**

The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985).  When a plaintiff moves for summary judgment on his own theory of recovery, he must prove he is entitled to summary judgment by establishing each element of his claim as a matter of law based upon undisputed or conclusive facts.  *Cody Texas, L.P. v. BPL Expl., Ltd.*, 513 S.W.3d 522, 530 (Tex. App.—San Antonio 2016, pet. denied); *see also Pinnacle Anesthesia Consultants, P.A. v. Fisher*, 309 S.W.3d 93, 100 (Tex. App.—Dallas 2009, pet. denied) (the plaintiff moving for summary judgment must affirmatively demonstrate by summary judgment evidence that there is no genuine issue of material fact concerning each element of his claim); *AccuFleet, Inc. v. Hartford Fire Ins. Co.*¸322 S.W.3d 264, 269 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (plaintiff moving for summary judgment on its claim must establish its right to summary judgment by conclusively proving all the elements of its cause of action as a matter of law). Once the movant establishes its right to summary judgment as a matter of law, the burden

shifts to the non-movant to present evidence raising a genuine issue of material fact. *Grynberg*, 196 S.W.3d at 135.

In Appellants' second issue, they are argue that Appellees' did not provide evidence of coverage under a private medical indemnity plan to which EMS had been given an assignment of benefits or other similar right. To be entitled to summary judgment on their declaratory judgment claim that the EMS liens at issue were invalid under section 55.004(g)(3), Appellees' evidence had to conclusively establish that EMS's charges were covered under a private medical indemnity plan or program and EMS was entitled to recover payment for their services from that plan or program under an assignment of benefits or similar right. *See* TEX. PROP. CODE ANN. § 55.004(g)(3). In their motion for summary judgment, Appellees argued that (1) the "[d]efendants filed emergency services liens even though they were entitled to recover payment from medical indemnity plans under an assignment of benefits or similar right…[t]his is a direct violation of Texas Property Code, [section] 55.004(g)(3), for which there is no defense[;]" and (2) EMS's lien against Hooker was for $1,202.00, in violation of section 55.004(f) of the property code, which caps EMS liens at $1,000. *See id.* § 55.004(f) (West 2014). The trial court's order granting summary judgment for Appellees states that "Defendants…violated Chapter 55 of [the] Texas Property Code by filing liens against Plaintiffs' third party claims even though Defendants were entitled to bill Plaintiffs' medical insurance." The court enjoined Appellants from "continuing the practice of filing emergency services liens against patients who have coverage under a private medical indemnity plan or program from which Lufkin EMS is entitled to recover payment for services under an assignment of benefits or similar right."

Appellants argue that Appellees did not meet their burden to establish entitlement to summary judgment because they failed to prove (1) the existence of a contract between their respective health insurance and EMS; and (2) that they had coverage under a private medical indemnity plan. Appellees argue that the term private medical indemnity plan "has a specific meaning within the insurance industry, [and] it must be given the meaning used within the insurance industry[.]"[3] Appellees argue that they met their burden because, according to their

---

[3] Appellants argue that the "legislature cannot have meant that an EMS provider can never file a valid Chapter 55 lien if the patient has health insurance." They further argue that the language "private medical indemnity plan," used in section 55.004(g)(3), is a term of art that has a specific and limited meaning within the insurance industry. *See* TEX. GOV'T CODE ANN. § 312.002(b) (West 2013). They direct our attention to two cases that "generally discussed" the distinctions between managed care plans and indemnity plans. Generally a court must determine the intent of the legislature as found in the plain meaning of the words and terms used, but if a term is

interpretation, section 55.004(g)(3) means that if EMS is entitled to payment from private health insurance, EMS may not maintain a lien.

We need not decide whether the Legislature intended "private medical indemnity plan" to encompass all health insurance policies because the summary judgment evidence does not establish that EMS's services would have been covered by Appellees' health insurance plans. *See Cody Texas, L.P*, 513 S.W.3d at 530; *see City of Keller*, 168 S.W.3d at 816; *see also* TEX. R. APP. P. 47.1. Regardless of the interpretation of "private medical indemnity plan or program," section 55.004(g)(3) states that EMS liens do not cover "charges by the emergency medical services provider for services provided if the injured individual *has coverage* under a private medical indemnity plan or program from which the provider is entitled to recover payment for the provider's services under an assignment of benefits or similar right." TEX. PROP. CODE ANN. § 55.004(g)(3) (emphasis added).

Appellees submitted hospital and emergency physician billing records via affidavit, certified copies of EMS's notices of liens, Southern's deposition transcript, a letter from Hooker's attorney, and the patient care report generated by EMS for Sanford, which contains an assignment of benefits of any and all insurance policies. The billing records reflect that each Appellee had a health insurance policy that covered payments to other medical providers who provided treatment related to the Appellees' respective accidents. However, evidence that Appellees' individual health insurance policies paid *other* providers for treatment related to the same accident does not conclusively establish that charges by Lufkin EMS for services it provided to Appellees were covered under a private medical indemnity plan or program from which Lufkin EMS was entitled to recover payment for its' services under an assignment of benefits or similar right. *See* TEX. PROP. CODE ANN. § 55.004(g)(1)-(3); *Cody Texas, L.P*, 513 S.W.3d at 530; *City of Keller*, 168 S.W.3d at 816. Moreover, Southern's deposition testimony

---

connected with and used with reference to a particular trade, the term shall have the meaning given by experts in the particular trade. *Id.*; *Lawyers Sur. Corp. v. Riverbend Bank, N.A.*, 966 S.W.2d 182, 185 (Tex. App.—Fort Worth 1998, no pet.). When a term used in a statute has a peculiar or technical meaning as applied to some art, science, or trade, the court will look to the particular art, science, or trade from which it was taken in order to ascertain its meaning. *Lloyd A. Fry Roofing Co. v. State*, 541 S.W.2d 639, 642 (Tex. Civ. App.—Dallas 1976, writ ref'd n.r.e.). If the technical term is not defined in the statute, courts have interpreted the statutes in light of the testimony of expert witnesses familiar with the particular art, science, or trade. *Id.* Here, Appellants did not present the argument to the trial court that "private medical indemnity plan" was a term of art as contemplated by section 312.002(b), nor did they attach any affidavits from experts in the field identifying the term as one of art and its meaning in the field. Because we only consider pleadings and evidence that were before the trial court at the time of its summary judgment ruling, we do not address this argument. *See* TEX. R. CIV. P. 166a(c); *see also Nguyen v. Citibank N.A.*, 403 S.W.3d 927, 932 (Tex. App.–Houston [14th Dist.] 2013, pet. denied).

establishes that Lufkin EMS only contracts with Medicare and Medicaid; thus, they do not know prior to submitting their bill and receiving a response from the private health insurance carrier whether the claim will be denied or accepted.

Other evidence submitted by Appellees consists of copies of the EMS liens in each case and copies of the patient care reports for Sanford, Mireles, and Brewer, which contain an assignment of benefits.[4] The patient care reports contain the following provision:

> I hereby assign to the City of Lufkin Fire/EMS the benefits of any and all insurance policies, including Health Insurance, Personal Injury Protection (PIP), Medical Payment (Med Pay) and/or Third Party liability to which I may be entitled for ambulance services. I further direct any and all insurance companies to make direct payment to the City Of Lufkin Fire/EMS for all services, items and/or supplies furnished to me or my family as the case may be. I hereby authorize payment directly to the City of Lufkin Fire/EMS Department for benefits payable to me, and further authorize the release of any medical records necessary to process my EMS bill.

This provision merely contains an assignment of benefits should the patient have insurance. As for the liens, they contain information regarding the at fault party's insurance, but no information regarding whether each Appellee has insurance that would cover EMS's services.

Appellees also provided the trial court with a copy of a letter from Hooker's attorney. In the letter, Hooker's attorney states, in pertinent part, that (1) EMS's bill for treatment indicates that it chose not to bill Hooker's health insurance, but asks Hooker to pay the bill from the proceeds of her personal injury claim; (2) he disputes the validity of the lien filed against Hooker's claims; (3) EMS is not precluded from billing Hooker's health insurance company even though she may ultimately prevail on a third party liability claim; (4) Hooker's "health insurance company should be billed under provisions that allow it to make payments and to recoup those payments from the third party settlement[;]" (5) Hooker's other healthcare providers billed and were paid by her insurer; and (6) EMS is only entitled to recover Hooker's co-pay. The letter further provides Hooker's health insurance information and requests certain information regarding why charges were not submitted to Hooker's health insurance and the amounts/dates of service EMS would be entitled to charge. Accordingly, the letter does not conclusively demonstrate that Appellees had insurance coverage for EMS's services.

---

[4] The patient care reports were attached to Appellants' summary judgment response and cross-motion for summary judgment, but incorporated by reference into Appellees' amended motion for summary judgment.

Appellees also argue that EMS's lien against Hooker's settlement is invalid because the lien amount exceeds $1,000. Appellees' evidence on this point consisted of a certified copy of a sworn document titled "Notice of Claim of Lien For Medical Services[,]" a letter from EMS to Hooker's attorney giving notice of the lien, and a copy of EMS's bill for Hooker. The "Notice of Claim of Lien for Medical Services" is file marked and paginated, indicating it is the second of two pages, with the first being a cover sheet from the county clerk indicating the instrument number. This document does not contain a dollar amount, but does contain the injured individual's name and address, the date of the accident, the name and location of the EMS provider claiming the lien, and the name of the person alleged to be liable for damages arising from the injury in compliance with the notice requirements of section 55.005 of the Texas Property Code. *See* TEX. PROP. CODE ANN. § 55.005 (West 2014). The letter from EMS to Hooker's attorney also does not contain a dollar amount. The bill, which is not file marked and does not indicate it is part of the notice of lien, states that EMS charged $1,202.00 for its services.

Section 55.004(f) states "an emergency medical services lien…is for the amount charged by the emergency medical services provider, not to exceed $1,000, for emergency medical services provided to the injured individual during the 72 hours following the accident that caused the individual's injuries." *See id.* § 55.004(f). Because the notice of lien does not state that it is for an amount in excess of $1,000, we disagree with Appellees' argument that the lien is invalid. The notice of lien complies with the statutory requirements of section 55.005. *See id.* § 55.004(a)-(b). While the total charges may exceed $1,000, EMS does not purport by its lien notice that it seeks to place a lien in excess of the statutory cap. Thus, we do not conclude that EMS's lien against Hooker is invalid because the charges in a bill submitted by Appellees, but not part of the filed notice of lien, exceeds $1,000.

For the above reasons, taking as true all evidence favorable to Appellants, we conclude that Appellees failed to conclusively prove all elements of their declaratory judgment claim as a matter of law and, consequently, did not establish they were entitled to summary judgment as a matter of law. *See **Rhone-Poulenc, Inc. v. Steel**, 997 S.W.2d 217, 223 (Tex. 1999). Because Appellees did not establish by the requisite summary judgment evidence that each Appellee had coverage for EMS's services, the trial court erred by granting Appellees' motion

for summary judgment.[5]  *See* TEX. R. CIV. P. 166a(c); *see also Steel,* 997 S.W.2d at 223.  We sustain Appellants' second issue.

**Appellants' No-Evidence Motion for Summary Judgment**

After adequate time for discovery, a party presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i).  The motion must state the elements of which there is no evidence.  The court must grant the motion if the non-movant fails to produce more than a scintilla of summary judgment evidence raising a genuine issue of material fact.  *Id*.; *Carrerra v. Yanez*, 491 S.W.3d 90, 94 (Tex. App.—San Antonio 2016, no pet.) (quoting *Medistar Corp. v. Schmidt*, 267 S.W.3d 150, 157 (Tex. App.—San Antonio 2008, pet denied)).  A no-evidence motion for summary judgment is essentially a directed verdict before trial.  *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003).  More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* at 751 (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact.  *Chapman*, 118 S.W.3d at 751 (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).  A no-evidence summary judgment will be granted when (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact.  *Chapman*, 118 S.W.3d at 751.

In their first issue, Appellants argue that an EMS provider is not prohibited from filing a Chapter 55 lien when it has no recourse against a patient's health insurance plan.  In their

_____

[5] Appellees argue that under the Affordable Care Act, all health insurance policies require EMS coverage, and thus, any insurance policy the Appellees had would have been required by law to provide coverage for EMS's services.  *See* 42 U.S.C. § 18022(b)(1)(c).  At oral argument, Appellants pointed out that the Department of Health and Human Services has extended, if permitted by applicable state authorities, certain issuers to continue certain coverage in the individual or group market that would otherwise be cancelled.  This extension has been applied to non-grandfathered policies starting on or before October 1, 2018 and must not extend past December 31, 2018.  We first note that this argument was not presented to the trial court.  *See* TEX. R. CIV. P. 166a(c); *see also Nguyen*, 403 S.W.3d at 932.  Nevertheless, we cannot conclude that the Affordable Care Act relieves Appellees of their obligation to furnish evidence as to their specific insurance policies, and it cannot be assumed that the policies comply with the Affordable Care Act.  Without evidence regarding the specifics of the coverage provided under the Appellees' respective policies, the Appellees cannot meet their burden of showing that the Appellees each maintained insurance, under which EMS's services would have been covered.

supplemental motion to the trial court they argued that "[s]ection 55.004(g)(3)[,] only acts as an exclusion if the emergency medical provider has a contract with a claimant's private medical indemnity plan or program[.]" They interpret the language within section 55.004(g)(3) that refers to an "assignment of benefits or similar right" to require a contract between the EMS provider and the health insurance plan or program before the exclusion applies. We disagree with this interpretation.

Our primary objective when construing a statute is to ascertain and give effect to the Legislature's intent. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004). In doing so, we must begin with the plain meaning of the statute's words. *Id***.** We read the statute as a whole, and if the language is unambiguous, we must interpret it according to its terms, giving meaning to the language consistent with other provisions of the statute. *Id.* We further consider the objective the law seeks to obtain and the consequences of a particular construction. *Id.*; TEX. GOV'T CODE ANN. § 311.023(1), (5) (West 2013). As previously stated, the purpose of Chapter 55 is to provide hospitals and other medical providers covered under the statute with an additional method of securing payment to encourage the prompt and adequate treatment of accident victims and reduce hospital costs. *See **McAllen Hosps., L.P.***, 433 S.W.3d at 537.

The plain language of section 55.004(g)(3) states that an EMS lien does not cover "charges by the EMS provider for services provided if the injured individual has coverage under a private medical indemnity plan or program from which the provider is entitled to recover payment for the provider's services under an assignment of benefits or similar right." *See* TEX. PROP. CODE ANN. § 55.004(g)(3). We do not interpret this language as requiring a contract between the private medical indemnity plan or program and the EMS provider, because the statute's plain language merely contemplates that the injured individual has coverage under a private medical indemnity plan or program from which EMS is entitled to recover payment under an assignment or similar right. ***Tex. Dep't of Transp***, 146 S.W.3d at 642. This interpretation is supported by both the plain language of the statute and the purpose of the statute. *See **id.***

As noted in Southern's deposition testimony, even though EMS has no contract with private health insurers, it still receives payments from private policies in some instances, depending on the policy. Appellees produced evidence that they each assigned or authorized

11

EMS to bill their health insurance provider, and that each had an active health insurance policy that paid for services each Appellee received from the day of their respective accidents. Thus, Appellees produced more than a mere scintilla of evidence that their liens fell under section 55.004(g)(3)'s exception. *See Chapman*, 118 S.W.3d at 751.

Appellants also argue that the term "private medical indemnity plan" is a term of art in the insurance industry, and that there is a distinction between private medical indemnity plans and "general health insurance." They contend that Appellees did not offer evidence of a "private medical indemnity plan" or evidence that EMS's charges would have fallen within their insurance coverage. Appellees point out that this argument was not made to the trial court at the time it granted Appellees' motion for summary judgment. Appellants respond that it was Appellees' burden to establish the existence of private indemnity plans that fall within the section 55.004(g)(3) exception and that Appellants urged, in their supplemental response and motion, that a fact question remained as to the coverage provided by Appellees' medical insurance.

An appellate court may not address issues not properly presented to the trial court. *See* TEX. R. APP. P. 33.1(a)(1), (2); *see also Diez v. Alaska Structures, Inc.*, 455 S.W.3d 737, 740 (Tex. App.—El Paso 2015, no pet.); *Jackson v. Carlton*, 04-14-00759-CV, 2015 WL 4554251, at \*2 (Tex. App.—San Antonio July 29, 2015, no pet.) (mem. op.) (appellate court could not address arguments in defense of no-evidence motion for summary judgment that were not presented to the trial court). Further, a no-evidence motion for summary judgment requires the movant to "state the elements as to which there is no evidence." TEX. R. CIV. P. 166a(i). Nevertheless, assuming Appellants preserved this argument for appeal, Appellees provided proof of an active insurance policy which paid for treatment from other providers for the same accident; thus, they produced more than a mere scintilla of evidence that they had coverage under a private medical indemnity plan or program that EMS is entitled to recover payment from under an assignment or similar right. *See Chapman*, 118 S.W.3d at 751.[6] Thus, we overrule Appellants' first issue.

---

[6] As previously discussed, Appellants argue that "private medical indemnity plan" is a term of art that has a specific meaning within the insurance industry. They argue that the "legislature cannot have meant that an EMS provider can never file a valid Chapter 55 lien if the patient has health insurance." They further argue that the language "private medical indemnity plan" used in 55.004(g)(3) is a term of art that has a specific and limited meaning within the insurance industry. *See* TEX. GOV'T CODE ANN. § 312.002(b). They direct our attention to two cases that "generally discussed" the distinctions between managed care plans and indemnity plans. Generally a

12

In issue three, Appellants contend there is no assignment of benefits from Hooker. In their response to Appellants' summary judgment motion, Appellees attached a letter from Hooker's attorney, which they contend authorized EMS to bill Hooker's health insurance. The letter, signed by Hooker's legal representative, states, in pertinent part, that "[h]er health insurance company should be billed under provisions that allow it to make payments and to recoup those payments from the third party payment." The letter also contains her health insurance information, including the name of the carrier, and the group number and member identification number. Appellants argue that the letter is not an assignment of benefits.

Section 55.004(g)(3) states that a lien does not attach to "charges by the EMS provider for services provided if the injured individual has coverage under a private medical indemnity plan or program from which the provider is entitled to recover payment for the provider's services under an *assignment of benefits or similar right*." TEX. PROP. CODE ANN. § 55.004(g)(3) (emphasis added). Accordingly, based on the statute's plain language, we conclude that this letter "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions" as to whether EMS had an assignment or similar right from Hooker to bill her health insurance. *See Chapman*, 118 S.W.3d at 751. Thus, Appellees responded with more than a mere scintilla of evidence that Hooker authorized EMS to bill her insurance provider under an assignment of benefits or similar right. *See id*. We overrule Appellants' third issue.

In issue four, Appellants contend that Sanford's claims are moot. Appellants attached an affidavit from Southern that Lufkin EMS released the lien on Sanford's claims on September 10, 2015, prior to Appellees filing suit. Appellees offered no evidence to controvert Southern's affidavit.

In order for a court to have jurisdiction over a case, there must exist a justiciable controversy between the parties. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 162 (Tex.

---

court must determine the intent of a the legislature as found in the plain meaning of the words and terms used, but if a term is connected with and used with reference to a particular trade, the term shall have the meaning given by experts in the particular trade. *Id.*; *Lawyers Sur. Corp. v. Riverbend Bank, N.A.*, 966 S.W.2d 182, 185 (Tex. App.—Fort Worth 1998, no pet.). When a term used in a statute has a peculiar or technical meaning as applied to some art, science, or trade, the court will look to the particular art, science, or trade from which it was taken in order to ascertain its meaning. *Lloyd A. Fry Roofing Co. v. State*, 541 S.W.2d 639, 642 (Tex. Civ. App.—Dallas 1976, writ ref'd n.r.e.). If the technical term is not defined in the statute, courts interpret the statute in light of the testimony of expert witnesses familiar with the particular art, science, or trade. *Id.* Here, Appellants did not make the argument before the trial court that "private medical indemnity plan" was a term of art as contemplated by section 312.002(b), nor did they provide any affidavits from experts in the field identifying the term as one of art and its meaning in the field.

2012). A case becomes moot when the court's action on the merits cannot affect the parties' rights or interests. *Id.* If a case becomes moot, the court must vacate any order or judgment previously issued and dismiss the case for want of jurisdiction. *Id.* Here, EMS released the lien on Sanford's claims prior to the filing of this action; thus, her claim for declaratory relief that EMS filed the lien in violation of Chapter 55 was moot prior to its filing, because there was no live controversy between Sanford and EMS. *See id.* Because Appellants offered evidence that Sanford's lien was released prior to Appellees filing suit, and Appellees did not present any evidence to controvert Southern's affidavit, the court erred in not granting Appellants' no evidence motion with respect to Sanford's Chapter 55 claim. *See Yanez*, 491 S.W.3d at 94 (no-evidence summary judgment must be granted if, after an adequate time for discovery, the moving party asserts there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial and the non-movant fails to produce more than a scintilla of summary judgment evidence raising a genuine issue of material fact on those elements). Thus, we sustain Appellants' fourth issue.

With the exception of Sanford's claims, we conclude that the trial court did not err in denying Appellants' no-evidence motion for summary judgment as to the claims of Hooker, Mireles, and Brewer. *See Chapman,* 118 S.W.3d at 751; *see also Yanez*, 491 S.W.3d at 94.


## CONCLUSION

Having sustained Appellants' second issue, we conclude that the trial court erred in granting summary judgment for Appellees, and we *reverse* and *remand* this case to the trial court for further proceedings consistent with this opinion. Further, having sustained Appellants' fourth issue, we conclude that the trial court erred in failing to grant their no evidence motion for summary judgment with respect to Sanford and we *reverse* the trial court's order and *render* a take nothing judgment for Wright and Southern as to Sanford's claims for declaratory and injunctive relief.


JAMES T. WORTHEN
Chief Justice


14

Opinion delivered December 13, 2017.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

DECEMBER 13, 2017

NO. 12-17-00095-CV

**KEITH WRIGHT AND BELINDA MELANCON SOUTHERN,**
Appellants
V.
**JOHNNA C. HOOKER, MARY SANFORD, BRANDY MIRELES AND RYAN BREWER,**
Appellees

Appeal from the 217th District Court

of Angelina County, Texas (Tr.Ct.No. CV-00624-15-10)

THIS CAUSE came to be heard on the oral arguments, appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the judgment be **reversed** and the cause **remanded** to the trial court **for further proceedings** consistent with this opinion; we **reverse** the trial court's order and **render** a take nothing judgment for Keith Wright and Belinda Melancon Southern as to Mary Sanford's claims for declaratory and injunctive relief. All costs of this appeal are hereby adjudged against the party incurring same; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*